

# NUMBERS 13-14-00661-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ELIAS GAITAN
A/K/A ELIAS GAITAN JR.,                                          Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

### On appeal from the 357th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Perkes and Longoria
### Memorandum Opinion by Justice Perkes

Appellant Elias Gaitan appeals his convictions for continuous sexual abuse of a child, aggravated sexual assault of a child, and two counts of indecency with a child. *See* TEX. PENAL CODE ANN. §§ 21.02, 21.11(a)(1), 22.021(a)(1) (West, Westlaw through 2015 R.S.). After a jury found him guilty of the offenses, the trial court sentenced appellant to

life imprisonment in the Texas Department of Criminal Justice-Institutional Division on the first two counts, and twenty years' imprisonment on counts three and four, to run consecutively. By two issues, appellant argues: (1) the trial court erred by denying appellant's motion to suppress his post-arrest statements; and (2) he received ineffective assistance of counsel. We affirm.

## I. BACKGROUND[1]

Prior to trial, appellant filed a motion to suppress three statements made to law enforcement following his arrest. At the suppression hearing, the State presented the testimony of Brownsville Police Department Detective Samuel Lucio and introduced two video recordings of statements made by appellant. The evidence presented at the suppression hearing reflects the following.

### A. First Statement

Detective Lucio was assigned to investigate allegations that appellant sexually abused his daughter over a period of years. Following appellant's arrest, Detective Lucio conducted a recorded interview with appellant at the Brownsville Police Department. At the outset of the conversation, appellant requested a "public defender." Detective Lucio then told appellant "that's what I was going to do. I was going to read you your rights and ask you if you wanted to give a statement without a lawyer." Detective Lucio stated "if you don't want to give a statement without a lawyer, that's fine." Appellant reiterated that he wanted a lawyer present during questioning. Detective Lucio then asked

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P.47.4.

2

appellant "do you know what you're being charged with?" Detective Lucio proceeded to describe the allegations of sexual abuse. He explained, "I wanted to read you your rights and ask you questions about that." Appellant then volunteered that he was having problems with his wife and that they had recently separated. Detective Lucio replied "do you want to answer questions or not because I need to make you aware of your rights." Appellant again stated he wanted a lawyer and made another reference to issues with his wife. Detective Lucio stated that "it's not the mom who's making the accusations. The one who is making the accusations is your daughter." He continued to explain that the child's mother was "shocked and hysterical when she found out what was going on." Detective Lucio proceeded to play a videotaped interview with appellant's daughter in which she detailed the allegations of sexual abuse. Following the video, Detective Lucio repeated the allegations before asking appellant "so you want to wait to talk to an attorney?" Appellant again stated he wanted a lawyer. Detective Lucio responded "[your daughter] said you would do this because she was going to have to learn anyway," and continued to describe the allegations. He said appellant's wife "almost had a nervous breakdown." The interview then concluded.

## B. Second Statement

Appellant's father, Elias Gaitan Sr., arrived at the police station the following day and asked to speak to Detective Lucio about his son's "case." Gaitan Sr. expressed disbelief that appellant committed the alleged offenses. He also told Detective Lucio that "I know that if I talk to him, he is going to tell me the truth." Detective Lucio asked Gaitan Sr. if he wanted to speak to appellant, and he said yes. After clearing the request with

3

his supervisor, Detective Lucio allowed Gaitan Sr. to speak to appellant in an interview room.   Detective Lucio did not provide any instructions to Gaitan Sr. regarding what he should say to appellant.   Only appellant and his father were present in the room which had a visible camera recording the conversation.   Appellant did not deny the allegations but told Gaitan Sr. that his actions were not "by force."

## C.     Third Statement

Following the conversation, Detective Lucio escorted appellant back to his jail cell. As they neared the elevator to the jail cells, appellant asked when he could speak to a lawyer.   Detective Lucio responded that an attorney would be appointed and he would be available if appellant's attorney wished to speak to him.   Appellant replied that he wanted to work out a deal, that he was not forceful with his daughter, and that the sexual abuse did not occur as frequently as alleged.   Detective Lucio then stated that once an attorney was appointed, he would be available.   This conversation was not recorded.

## D.     Trial Court's Ruling

The trial court suppressed appellant's initial interview with Detective Lucio, but denied appellant's motion to suppress the second and third conversations.[2]   The trial court issued the following findings of fact and conclusions of law:

FINDINGS OF FACT

1.     The motion to suppress regarding the above numbered and styled cause concerns three (3) separate statements made by [appellant] while he was in custody.

---

[2] We initially abated this appeal and instructed the trial court "to enter an order stating its conclusion as to whether or not the challenged statements were voluntarily made, along with specific findings of fact upon which the conclusion is based."   *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (West, Westlaw through 2015 R.S.).   The trial court subsequently entered findings of fact and conclusions of law which were filed as a supplemental clerk's record.

4

. . . .

3. The first statement occurred when [appellant] was questioned by Detective Lucio . . . on November 26, 2012.

4. At the beginning of the conversation, [appellant] informed Det. Lucio that he would like an attorney.

5. Although Det. Lucio did not ask [appellant] any direct questions, Det. Lucio continued speaking with [appellant] after this request was made.

. . . .

8. The second statement occurred the following day during a conversation between [appellant] and [his] father, [Gaitan Sr.]

9. [Gaitan Sr.] showed up at BPD wishing to speak with [appellant] regarding the allegations.

10. Neither Detective Lucio, nor any other police officer asked [Gaitan Sr.] to come to the Police Department.

11. [Gaitan Sr.] asked to speak to [appellant] out of his own concern for [his] well[-]being.

12. Neither Detective Lucio, nor any other police officer directed [Gaitan Sr.] to ask [appellant] any particular questions.

13. The conversation between [Gaitan Sr.] and [appellant] occurred in an interrogation room where the conversation was recorded.

14. It is apparent from comments made on the video that [Gaitan Sr.] and [appellant] were aware that their conversation was being recorded.

15. [Gaitan Sr.] is not, and never has been, a certified peace officer, police officer, or agent of the State.

16. The third statement took place between [appellant] and Detective Lucio.

17. After [appellant] spoke with [Gaitan Sr.], Detective Lucio escorted [appellant] back to his jail cell.

5

18. In the elevator on the way down to his cell, Detective Lucio informed [appellant] that he would be available to speak with him once [appellant] was appointed an attorney and could have counsel present during the conversation.

19. [Appellant] then made an admission to Detective Lucio regarding the allegations against him and stated that he wanted to work out a deal with the State.

20. [Appellant] volunteered these statements to Detective Lucio without any prompting or questioning from Detective Lucio or any other police officer.

## CONCLUSIONS OF LAW

. . . .

2. During the first conversation between [appellant] and Detective Lucio, Detective Lucio did not comply with [appellant's] constitutional and statutory rights as is provided in article 38.22, section 3(a)(1) and (2) in the Texas Code of Criminal Procedure.

3. Although no direct questions were made to [appellant], [appellant] did request a public defender at the beginning of this conversation.

4. Detective Lucio should not have continued speaking with [appellant] after [appellant] requested an attorney.

5. The second statement which occurred between [appellant] and his father . . . was not the result of custodial interrogation.

6. [Gaitan Sr.] is not a certified police officer and went to BPD out of his own concern for [appellant's] well[-]being.

7. There is no evidence which suggests that [Gaitan Sr.] was trying to aid the Brownsville Police Department in any way, but was merely concerned about the welfare of his son.

8. [Gaitan Sr.] was not conducting an investigation in any official capacity.

9. Therefore, [Gaitan Sr.] was not acting as a state agent during this recorded conversation, the statement was not made as a result of

6

custodial interrogation, and Art. 38.22 of the Texas Code of Criminal Procedure does not apply to its admissibility. . . .

10.  The third statement which took place between [appellant] and Detective Lucio was the result of res gestae statements that occurred without any prompting from the authorities.

11.  This conversation was not done in an interrogation room or otherwise intimidating location that could conceivably have pressured [appellant] into making an incriminating statement.

. . . .

13.  Detective Lucio had no reason to know that informing [appellant] that he could meet with him after he was appointed an attorney would result in [appellant] eliciting an incriminating response.   . . .

14.  [Appellant] voluntarily waived his right to counsel by initiating communication with BPD after he had previously requested an attorney.

15.  Therefore, Art. 38.22 of the Texas Code of Criminal Procedure does not apply to the statement's admissibility.   . . .

At trial, Detective Lucio testified, without objection, that appellant did not deny the allegations of sexual abuse during the initial interview.   A jury returned a guilty verdict. This appeal followed.

## II.  RIGHT TO COUNSEL

By his first issue, appellant argues "the trial court [should] have excluded [appellant's] statements because they were the product of continued questioning after he requested the assistance of counsel."   Specifically, appellant maintains that his statements were taken "in violation of his Fifth and Sixth Amendment right to counsel, and in violation of articles 38.22 . . . and 38.23 of the Texas Code of Criminal Procedure."

## A.  Standard of Review

7

In reviewing the trial court's ruling on a motion to suppress statements made as a result of custodial interrogation, we apply a bifurcated standard of review. *Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *Nelson v. State*, 463 S.W.3d 123, 126 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). We review the ruling in light of the totality of the circumstances, giving total deference to the trial court on questions of historical fact, as well as its application of law to fact questions that turn on credibility and demeanor. *Pecina*, 361 S.W.3d at 79; *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). But we review de novo the trial court's rulings on questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Pecina*, 361 S.W.3d at 79; *Leza*, 351 S.W.3d at 349. We view the record in the light most favorable to the trial court's ruling and reverse the judgment only if lies outside the zone of reasonable disagreement. *Hereford v. State*, 339 S.W.3d 111, 118 (Tex. Crim. App. 2011); *Nelson*, 463 S.W.3d at 126.

## B.    Applicable Law

The Fifth Amendment prohibits the government from compelling a criminal suspect to bear witness against himself. U.S. CONST. amend V ("No person ... shall be compelled in any criminal case to be a witness against himself"). "In *Miranda v. Arizona*, the Supreme Court crafted safeguards to protect this 'privilege against self-incrimination' in the inherently coercive atmosphere of custodial interrogations." *Pecina*, 361 S.W.3d at 75 (citing *Miranda v. Arizona*, 384 U.S. 436, 441 (1966)). Before questioning a suspect who is in custody, police must give that person *Miranda* warnings. *Id.* Only if the person

voluntarily and intelligently waives his *Miranda* rights, including the right to have an attorney present during questioning, may his statement be introduced into evidence against him at trial. *Id.* (citing *Miranda*, 384 U.S. at 475).

To protect the privilege against self-incrimination guaranteed by the Fifth Amendment, police may not conduct a custodial interrogation of a suspect who has requested the assistance of counsel.[3] *Minnick v. Mississippi*, 498 U.S. 146, 147 (1990); *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981); *see Nelson*, 463 S.W.3d at 127. Once an individual in custody invokes his right to counsel, "interrogation 'must cease until an attorney is present.'"[4] *Minnick*, 498 U.S. at 150 (quoting *Miranda*, 384 U.S. at 474). Thus, statements made in response to further police-initiated questioning without the presence of an attorney are inadmissible, even if made after the suspect is again advised of his rights. *Id.* at 150–51; *see also* TEX. CRIM. PROC. CODE ANN. art. 38.23(a) (West, Westlaw through 2015 R.S.) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."). However, if a statement does not stem

---

[3] In contrast, the Sixth Amendment right to counsel attaches once the "adversary judicial process has been initiated," and it guarantees "a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009); *see* U.S. CONST. amend VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). This means a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. *Brewer v. Williams*, 430 U.S. 387, 398 (1977). The record reflects that appellant's Sixth Amendment right to counsel had not yet attached when the pertinent statements were made, and appellant does not argue otherwise.

[4] The rights created by *Miranda*, including the right to have counsel present during custodial interrogation, "are not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989).

from custodial interrogation, it is admissible against the accused on the question of guilt. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 5; *Chambliss v. State*, 647 S.W.2d 257, 263 (Tex. Crim. App. 1983).

## C.    Analysis

The State does not dispute that appellant was in custody and invoked his right to counsel.    Therefore, the dispositive issue is whether appellant's statements were made in response to police interrogation.

### 1.    Statements to Gaitan Sr.

Appellant argues that the statements made to Gaitan Sr. amounted to "continued police-initiated custodial interrogation[.]"    Appellant compares the situation to employing a jailhouse informant and contends the State impermissibly created "a situation likely to induce incriminating statements[.]"

The procedural safeguards under *Miranda* apply only to custodial interrogation by law enforcement officers or their agents.    *See Wilkerson v. State*, 173 S.W.3d 521, 527 (Tex. Crim. App. 2005).    Private citizens ordinarily are not regarded as law enforcement officers and thus cannot engage in custodial interrogation.    *See Paez v. State*, 681 S.W.2d 34, 36–37 (Tex. Crim. App. 1984) (article 38.22 does not apply to non-law enforcement personnel who are not government agents); *Oriji v. State*, 150 S.W.3d 833, 836 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).    A citizen who acts as an agent of law enforcement and interrogates a person in custody, however, is "bound by all constitutional and statutory confession rules[.]"    *Wilkerson*, 173 S.W.3d at 529–30. "The term 'agency' denotes a consensual relationship which exists between two persons

10

or parties where one of them is acting for or on behalf of the other." *Id.* at 529. "The person alleging such a relationship has the burden of proving it." *Id.*

To determine if an agency relationship exists, appellate courts must examine the entire record and consider three factors: (1) the relationship between the police and the potential police agent; (2) the interviewer's actions and perceptions; and (3) the defendant's perceptions of the encounter. *Id.* at 530–31. This test helps courts determine whether the interviewer was acting as an instrumentality or was "in cahoots" with the police or prosecution. *Elizondo v. State*, 382 S.W.3d 389, 394 (Tex. Crim. App. 2012) (citing *Wilkerson*, 173 S.W.3d at 531).

Regarding the first factor, there is no evidence of an agency relationship between law enforcement and Gaitan Sr. Detective Lucio did not instruct Gaitan Sr. to obtain a statement from appellant, and he did not direct Gaitan Sr. to ask appellant any particular questions. Rather, it was Gaitan Sr. who volunteered to Detective Lucio that appellant would tell him the truth. Detective Lucio simply allowed Gaitan Sr. to speak with appellant. We conclude that the first factor weighs against a finding of an agency relationship.

The second part of the *Wilkerson* test focuses on the interviewer's actions and perceptions to evaluate the purpose of the interview. *Wilkerson*, 173 S.W.3d at 530. Gaitan Sr. initiated contact with Detective Lucio and stated he wanted to speak with his son. Gaitan Sr. did not indicate he wanted to obtain an incriminating statement from appellant. To the contrary, he expressed that he did not believe his son was capable of the allegations. The trial court also found that Gaitan Sr. "asked to speak to [appellant]

11

out of his own concern for [appellant's] well[-]being." We conclude that this factor also weighs against an agency finding.

The third *Wilkerson* factor focuses on the defendant's perception of the encounter. There is nothing in the record indicating that Gaitan Sr. appeared to appellant to be cloaked with the actual or apparent authority of the police. *See Elizondo*, 382 S.W.3d at 396. Rather, as reflected by the trial court's findings, appellant perceived the encounter as a conversation with a concerned parent. We conclude that this factor also weighs against a finding of agency.

We conclude that Gaitan Sr. was not acting as an agent of law enforcement when he spoke to appellant. *See Pecina*, 361 S.W.3d at 79; *Hereford*, 339 S.W.3d at 118. Accordingly, appellant's statements during this conversation were not the product of a custodial interrogation. *See Wilkerson*, 173 S.W.3d at 529–30.

### 2. Statements to Detective Lucio

Appellant argues his statements to Detective Lucio as they were approaching the transport elevators were inadmissible for three reasons: (1) there was no "electronic recording" to verify the statements were made; (2) appellant did not receive warnings regarding his constitutional rights and waiver of such rights; and (3) the statements were taken in violation of appellant's right to counsel.

Texas Code of Criminal Procedure article 38.22, section 3(a) provides as follows:

> No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:
>
> (1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

12

(2)     prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(3)     the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;

(4)     all voices on the recording are identified; and

(5)     not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a). Appellant was not given *Miranda* warnings prior to making the challenged statements, and the conversation was not recorded. However, article 38.22 does not preclude the admission of statements that do not stem from an interrogation. *Id.* § 5 ("Nothing in this article precludes the admission . . . of a statement that does not stem from custodial interrogation, or of a voluntary statement[.]"). Furthermore, the Fifth Amendment does not bar "[v]olunteered statements of any kind." *Miranda*, 384 U.S. at 478. To be an interrogation, a statement or question must demonstrate "a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). An interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301. The determination of whether the police should know such actions are reasonably likely to elicit an incriminating response "focuses primarily on the perceptions of the suspect, rather than the intent of

13

the police." *Id.* Off-hand remarks that are not particularly evocative under the circumstances do not constitute interrogation, as opposed to subjecting the suspect to a "lengthy harangue." *Id.* at 303.

In *Innis*, the Supreme Court held that police officers did not interrogate a suspect when officers had a conversation in the range of the suspect's hearing but did not ask the suspect a question. *Id.* at 294–95, 302. The officers were discussing a missing shotgun while transporting the defendant, noting a concern that children were present in the area and could discover the weapon. *Id.* at 294–95. The suspect interrupted the officers' conversation with a statement. *Id.* at 295. After receiving *Miranda* warnings, he led them to the hidden weapon. *Id.* The Supreme Court found that the officers' conversation was not an interrogation. *Id.* at 302.

While Detective Lucio was escorting appellant to his cell, appellant asked when he could speak to a lawyer. Detective Lucio responded that an attorney would be appointed and that he would be available if appellant's attorney wished to speak to him. Like the statement in *Innis,* Detective Lucio's comment was not a statement reasonably likely to elicit an incriminating response. *See id.* at 301. Rather, the comment indicated that Detective Lucio would speak with appellant after an attorney was appointed and was present. This statement is simply a recognition that appellant had asserted his Fifth Amendment right to counsel. We conclude that appellant's subsequent statements were not the product of a custodial interrogation.

**D.      Summary**

14

We conclude that the challenged statements were not the product of a custodial interrogation. *See Pecina*, 361 S.W.3d at 79; *Hereford*, 339 S.W.3d at 118. Accordingly, the statements are not rendered inadmissible under either article 38.22 or the Fifth Amendment. *See* TEX. CODE CRIM. PROC. ANN. art 38.22, § 5; *Miranda*, 384 U.S. at 478. We overrule appellant's first issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, appellant argues that his "trial counsel rendered ineffective assistance . . . when she failed to object to previously excluded evidence at trial." Specifically, appellant maintains that his trial counsel failed to object to testimony concerning his first conversation with Detective Lucio.

### A. Standard of Review and Applicable Law

To prevail on an ineffective assistance claim, appellant must show (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "Unless appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective." *Lopez*, 343 S.W.3d at 142. To satisfy the first prong, appellant must prove by a preponderance of the evidence that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Id.* To prove prejudice, appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different. *Id.*

15

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if appellant rebuts the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Lopez*, 343 S.W.3d at 142. "In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Lopez*, 343 S.W.3d at 142. "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). When direct evidence is unavailable, we will assume counsel had a strategy "if any reasonably sound strategic motivation can be imagined." *Lopez*, 343 S.W.3d at 143. "In making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Id.*

## B. Analysis

Appellant complains that his trial counsel failed to object to the following testimony by Detective Lucio during direct examination by the State:

Q. One of the things that was mentioned, [Gaitan Sr.] said something about that you asked him what if I tell you [the victim] also—she said you also raped her. Did [the victim] ever indicate that [Gaitan Sr.] had done anything to her?

A. [W]hen I spoke to [appellant], he made no denial. And—but I told [Gaitan Sr.], "If I told you that your granddaughter says that you raped her, how would you react?" And [Gatain Sr.] says, "I would tell you immediately it didn't happen. I would be upset that that was even being said." And I said, "Exactly. And that's not what your son did."

16

Although the State's question pertains to Detective Lucio's conversation with Gaitan Sr., his response was clearly in reference to his first conversation with appellant, which the trial court suppressed. Appellant's trial counsel did not object to the testimony.

We note that this is the only instance where appellant alleges his trial counsel was deficient. Although it is possible that a single egregious error by counsel can constitute ineffective assistance, Texas courts have been hesitant to "designate any error as per se ineffective assistance of counsel as a matter of law." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (quoting *Jackson v. State*, 766 S.W.2d 504, 508 (Tex. Crim. App. 1985)). An appellate court should be especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation behind counsel's actions—whether those actions were of strategic design or the result of negligent conduct. *Id.* at 814.

Appellant's claim is based on an omission: his counsel's failure to object to testimony concerning a statement that the trial court had previously ruled was inadmissible. The record is silent as to why appellant's trial counsel chose not to object or failed to object because appellant did not file a motion for new trial. To satisfy the first prong of *Strickland* on a silent record, it must be apparent "that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Lopez*, 343 S.W.3d at 143; *see also Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (conduct "so outrageous that no competent

17

attorney would have engaged in it"). This is not such a case, as it is possible appellant's trial counsel chose not to object based on a reasonable trial strategy. "One such reasonably sound strategic motivation could have been the desire to avoid drawing additional attention to the [evidence.]" *Kuhn v. State*, 393 S.W.3d 519, 539 (Tex. App.— Austin 2013, pet. ref'd). A desire to avoid drawing attention to evidence "may be particularly useful when, for example, only a passing, but possibly objectionable, reference is made and the defense attorney believes that the reference would largely go unnoticed." *Ex parte Bryant*, 448 S.W.3d 29, 41 (Tex. Crim. App. 2014).

Detective Lucio's reference to his first meeting with appellant was a passing one. The State made no attempt to elicit further testimony concerning the conversation and did not reference Detective Lucio's testimony during closing arguments. We also observe that the State's preceding question pertained to a conversation between Detective Lucio and Gaitan Sr.—not appellant. Trial counsel could not have anticipated Detective Lucio's response would reference any statement by appellant. Further, we must assume that appellant's counsel chose not to object to avoid drawing attention to passing reference. *See id.*

On this record, we cannot conclude appellant successfully defeated the strong presumption that the decisions of counsel during trial fell within the wide range of reasonable professional assistance. *See Thompson*, 9 S.W.3d at 814. Because of our conclusion, we need not address the second prong under *Strickland*. *See Lopez*, 343 S.W.3d at 142. We overrule appellant's second issue.

## IV. Conclusion

18

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
10th day of November, 2016.