**Opinion filed March 18, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00224-CR
_____

**ROBERT ZBIGNIEW CIEZKI, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 12521-D**

## M E M O R A N D U M   O P I N I O N

Robert Zbigniew Ciezki was indicted in a four-count indictment of possession of heroin with intent to deliver, possession of methamphetamine with intent to deliver, possession of heroin, and possession of methamphetamine. Each count included an enhancement allegation. Appellant subsequently filed a motion to suppress in which he contested the legality of a vehicle search and sought the suppression of any statement made as a result of the search. The trial court denied

Appellant's motion. Appellant pleaded guilty to the first count, and the trial court assessed his punishment in accordance with the plea-bargain agreement at confinement for fifteen years and sentenced him accordingly. We affirm.

*Issues*

In his first issue on appeal, Appellant argues that the trial court erred when it denied his motion to suppress because the police did not have reasonable suspicion to justify a "free air sniff" by a drug detection dog. In his second issue on appeal, Appellant argues that the trial court erred when it did not suppress a statement Appellant made in response to police questioning after Appellant had invoked his right to counsel.

*Background Facts*

On the day of the offense, Agent Gary Castillo of the Abilene Police Department received information that an unknown white female and an unknown white male were in a white Jeep and that there might be narcotics in the vehicle. When Agent Castillo went to the designated location, he saw a vehicle that matched the given description. He then called for assistance from his division. Agent Castillo watched the vehicle at the residence and observed a white female and a white male, who was later identified as Appellant, come and go from the vehicle.

When the vehicle started to travel, Agent Castillo and officers assisting him began "moving surveillance." Agent Castillo told the officers to watch the vehicle to see if any traffic violations were committed so that they could initiate a traffic stop. Sergeant Joshua Davis observed the vehicle commit three traffic violations: failure to signal a right-hand turn, failure to stop at a designated point, and making a wide right turn. He then informed officers of what he observed and directed a patrol officer to initiate a traffic stop. During the traffic stop, Sergeant Davis found three people in the vehicle: Appellant was in the front passenger seat; Victoria Lomas was the driver; and Tosha Sorrels was in the back seat.

2

Agent Alfred Dixon was called to conduct a canine open-air sniff of the vehicle and was already following the vehicle when the traffic stop was initiated. Once the occupants were removed from the vehicle, and while another officer was running their driver's licenses, Agent Dixon and his canine conducted the open-air sniff. The canine alerted to the presence of narcotics in the vehicle. Agent Castillo then searched the vehicle and found a small, red rubber box on the driver's side floorboard that contained methamphetamine and heroin. Appellant, Lomas, and Sorrels were then handcuffed and transported to the Law Enforcement Center along with the vehicle.

At the hearing on Appellant's motion to suppress, Agent Castillo testified that, once they all arrived at the Law Enforcement Center, all three of the subjects were detained, taken to a workroom, and read their *Miranda*[1] rights. At this time, Appellant invoked his right to an attorney and did not want to speak. Agent Castillo testified that he then asked out loud in front of all three subjects if anyone wanted to claim the heroin and methamphetamine in the red container. However, no one answered, and he took Lomas out of the workroom to interview her.

During her interview, Lomas said that she was Appellant's girlfriend and that the drugs belonged to Appellant. Agent Castillo testified that, when he took Lomas back to the workroom, she and Appellant began to argue and continued to do so for twenty or thirty minutes. During the argument, Agent Castillo heard Appellant state that the drugs were his, and Lomas then said, "[T]here, he said it, it's his." Agent Castillo along with Agent Dixon then took Appellant to another room, read him his rights again, and asked if he wanted to talk, but Appellant did not want to speak with them.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

After the hearing on Appellant's motion to suppress, the trial court denied Appellant's motion and issued findings of fact. The trial court found that Appellant's statement that the methamphetamine and heroin were his "was in response to the argument with his girlfriend" and "was not in response to Agent Castillo's inquiry to the group."

*Standard of Review*

We review a trial court's decision on a motion to suppress for an abuse of discretion and apply a bifurcated standard of review "affording almost complete deference to the trial court's determination of historical facts" and reviewing the application of the law to those facts de novo. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016); *accord Cole v. State*, 490 S.W.3d 918, 922 (Tex. Crim. App. 2016). "We will sustain the judge's ruling if the record reasonably supports that ruling and is correct on any theory of law applicable to the case." *Cole*, 490 S.W.3d at 922.

*Analysis*

**1. The open-air sniff was conducted lawfully.**

In his first issue, Appellant argues that the trial court committed error when it denied his motion to suppress because there was no reasonable suspicion to allow for the open-air sniff. As an initial matter, an officer may have a canine perform an open-air sniff around a vehicle while a lawful traffic stop is ongoing without any additional justification. *See 1979 Pontiac Auto. v. State*, 988 S.W.2d 241, 243 (Tex. App.—Eastland 1998, no pet.); *see also Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref'd). However, a traffic stop constitutes a seizure within the meaning of the Fourth Amendment and must be reasonable. *Whren v. United States*, 517 U.S. 806, 809–10 (1996); *Kothe v. State*, 152 S.W.3d 54, 62–63 (Tex. Crim. App. 2004). Therefore, the officers must have at least a reasonable suspicion to believe that a traffic violation has occurred, and the traffic

4

stop must be reasonably related, in scope and duration, to the purpose of investigating the violation. *See Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). An actual traffic violation justifies the initial detention. *Walter v. State*, 28 S.W.3d 538, 543 (Tex. Crim. App. 2000). Further, "[t]here need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant." *State v. Clark*, 315 S.W.3d 561, 564 (Tex. App.—Eastland 2010, no pet.) (citing *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001)); *see Whren*, 517 U.S. at 813.

Here, the record reflects that the traffic stop was objectively valid: Sergeant Davis testified that he observed at least three traffic violations. Therefore, reasonable suspicion existed to stop and detain the vehicle's occupants based on those traffic violations. The fact that law enforcement had an ulterior motive for making the stop—i.e., to conduct a narcotics investigation—is of no consequence. *See Crittenden v. State*, 899 S.W.2d 668, 674 (Tex. Crim. App. 1995). Further, the open-air sniff was conducted while the traffic stop was still ongoing. We can find no evidence in the record to suggest that the open-air sniff was improper in any manner whatsoever. Thus, we find that the trial court did not abuse its discretion when it denied Appellant's motion to suppress with respect to the open-air sniff, and we overrule Appellant's first issue.

## 2. Appellant's incriminating statement was not made in response to police interrogation.

In his second issue, Appellant claims that the trial court erred when it denied his motion to suppress with respect to a statement he made to police. Specifically, Appellant claims he made the statement in response to police questioning after he had invoked his right to counsel.

The Fifth Amendment prohibits the government from compelling a criminal defendant to make statements incriminating himself. U.S. CONST. amend V. "In

*Miranda v. Arizona*, the Supreme Court crafted safeguards to protect this 'privilege against self-incrimination' in the inherently coercive atmosphere of custodial interrogations." *Pecina v. State*, 361 S.W.3d 68, 74–75 (Tex. Crim. App. 2012) (quoting *Miranda v. Arizona*, 384 U.S. 436, 441 (1966)). To protect this privilege against self-incrimination, "police may not conduct a custodial interrogation of a suspect who has requested the assistance of counsel." *Gaitan v. State*, 533 S.W.3d 19, 27 (Tex. App.—Corpus Christi–Edinburg 2016, pet. ref'd). Indeed, once an individual in custody invokes his right to counsel, the police must cease interrogation until an attorney is present. *Id.* "Thus, statements made in response to further police-initiated questioning without the presence of an attorney are inadmissible"; however, statements that do not stem from custodial interrogation are admissible against the accused. *Id.* In addition, "[t]he procedural safeguards under *Miranda* apply only to custodial interrogation by law enforcement officers or their agents. Private citizens ordinarily are not regarded as law enforcement officers and thus cannot engage in custodial interrogation." *Id.* at 28 (citation omitted).

Here, the trial court found that at the Law Enforcement Center, after Appellant had invoked his right to counsel, Agent Castillo asked the three subjects, including Appellant, "Does anyone want to claim the heroin and methamphetamine?" None of the three subjects responded to that question. Appellant argues that this question asked by Agent Castillo was improper with respect to Appellant and, thus, that any statement made in response was compelled in violation of Appellant's right to counsel. However, the trial court also found that Appellant did not respond to Agent Castillo's question and that Appellant's later statement that the drugs were his resulted from his argument with Lomas and was not made in response to Agent Castillo's question. The record supports these findings. Agent Castillo testified that it was after he interviewed Lomas and returned her to the workroom

6

with Appellant and Sorrels, and during Lomas and Appellant's twenty- to thirty-minute argument, that he overheard Appellant state that the drugs were his.

Appellant claims in his brief "that the admission made in the argument is *tainted* because the argument was *set in motion* by the police acting in contravention of Appellant's expressed assertion of his rights" (emphasis added). We find no indication in the record that the police coached Lomas to elicit an incriminating response from Appellant or that the police violated his *Miranda* rights in an allegedly circuitous way. We reject the argument that Appellant's admission was somehow legally *tainted*. When reviewed in context, the argument was a natural result of Lomas being questioned by police and wanting to convince investigating officers that she was not the person in possession of the heroin and methamphetamine. We hold, therefore, that the trial court did not abuse its discretion when it denied Appellant's motion to suppress with respect to his inculpatory statement. We overrule Appellant's second issue.

### This Court's Ruling

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

March 18, 2021

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.