**Opinion issued May 4, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-00357-CR

———————————

**THE STATE OF TEXAS, Appellant**

**V.**

**JUAN NEGRETE, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1524468**

---

## O P I N I O N

In this interlocutory appeal,[1] appellant, the State, challenges the trial court's

order granting the pretrial motion to suppress filed by appellee, Juan Negrete. In its

sole issue, the State contends that the trial court erred in granting appellee's motion

---

[1]    *See* TEX. CODE CRIM. PROC. art. 44.01(a)(5).

to suppress the videotape recording of appellee's oral statement to law enforcement officers.

We affirm.

**Background**

A Harris County grand jury issued a true bill of indictment, alleging that appellee, on or about September 17, 2016, "did then and there unlawfully, intentionally and knowingly commit the felony offense of deadly conduct by knowingly discharging a firearm at and in the direction of a vehicle, namely a motor vehicle, and [appellee] was reckless as to whether the vehicle was occupied, and while in the course of and furtherance of said offense did commit an act clearly dangerous to human life, to-wit: by shooting with a firearm and did thereby cause the death of Jaime Rivera," the complainant.[2] (Emphasis omitted.)

Later, appellee moved to suppress his statement made to law enforcement officers after he was arrested on September 20, 2016 for the felony offense of murder. According to appellee, during his interview with law enforcement officers, he invoked his Fifth Amendment right to counsel and requested counsel, but officers did not cease their interrogation in violation of appellee's Fifth Amendment right.[3] Appellee also asserted that, during his interview, law enforcement officers

---

[2] *See* TEX. PENAL CODE ANN. § 19.02(b) ("Murder").

[3] *See* U.S. CONST. amends. V, XIV.

2

threatened his family members, rendering his confession involuntary. Appellee requested that the trial court suppress the videotaped recording of his oral statement to law enforcement officers.

No witnesses testified at the hearing on appellee's motion to suppress. The trial court, however, viewed the videotaped recording of appellee's statement to law enforcement officers.[4]

The videotaped recording shows appellee handcuffed to a chair when two law enforcement officers enter the room. Appellee remains handcuffed while officers ask him questions. The handcuffs are removed about four minutes and fifty seconds into the videotaped recording. About seven minutes and thirty seconds into the videotaped recording, one of the law enforcement officers reads appellee the required *Miranda*[5] and Texas Code of Criminal Procedure article 38.22 warnings.[6] The officer then tells appellee that the officers want to talk to him about "a homicide," and he immediately states that he and the other law enforcement officer

---

[4]    Although the videotaped recording of appellee's statement was not admitted into evidence at the suppression hearing, we previously ordered it included in the appellate record, and we consider it in this appeal. *See Amador v. State*, 221 S.W.3d 666, 673–74 (Tex. Crim. App. 2007); *Cornish v. State*, 848 S.W.2d 144, 145 (Tex. Crim. App. 1993) ("[E]vidence which, although not formally introduced is nevertheless treated by the trial court and the parties as if it had been, may be considered on appeal as if admitted.").

[5]    *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[6]    *See* TEX. CODE CRIM. PROC. ANN. art. 38.22.

"don't want [appellee's] . . . younger brother" "to be wrapped up in this" and "mixed up in this, if he is not involved." Appellee responds, "He's not." The officer tells appellee that he has information that appellee and "Ivan" were in the car, but the officers need details on "who was involved," "who was driving," "the facts," and "what happened." He says to appellee, "[O]bviously we got to your house." And the officer tells appellee he has a "big problem" because he does not "want to put [appellee's] mother and father in jail if [he] doesn't have to." When appellee asks "why" his parents would be put "in jail," the officer replies that there were "assault rifles . . . in [a] bedroom that . . . [were] completely and totally accessible by a . . . child." Appellee tells the officer that his parents did not know that "they were there."

The law enforcement officer then asks appellee to "explain to [the officers], . . . within th[e] last week when [appellee] and Ivan were together, what happened." Appellee responds, "[H]ow many people are y'all putting in the car?" The officer states, "I want you to tell me." And appellee replies, "I don't want to snitch without a lawyer."[7] In response to appellee's statement, the law enforcement officer says: "[W]e are not talking about snitching, what we are talking about is keeping your mother and father from going to jail." When appellee asks, "[F]or

---

[7] Appellee makes this statement about thirteen minutes and ten seconds into the videotaped recording and about five minutes and thirty seconds after he was read the required warnings.

4

what though," the officer states, "for the dope," "for the rifles," while the other law enforcement officer interjects "for the narcotics paraphernalia," "for the almost $14,000 of illegal money that was up there," and "for a lot of things." Appellee replies, "They don't even know" and "They don't even go up there." The officer tells appellee, "We know you smoke up there." When appellee says that his mother is "not a criminal," she just "gets nervous," the other officer tells appellee "she's gonna get a lot more nervous."

The law enforcement officer then redirects the discussion "to get to the bottom of this so that [the officers] can clear up a lot of stuff." The officer tells appellee to explain "what happened, what took place." Appellee asks, "When? That night?" Appellee expresses reluctance to talk about the people in the car because they know that he was there. The law enforcement officer tells appellee to tell him what appellee "know[s]." Appellee states that he was "driving under the influence" and he was coming from "the club." In response to the law enforcement officer's questions, appellee explains that "Ivan" was sitting in the front-passenger seat of the sport utility vehicle ("SUV"). Appellee again expresses concern about "the other people" and asks about "witness protection." The law enforcement officer explains that he obtained a search warrant for appellee's SUV and house and the officers knew that appellee was "involved" and that "Ivan was involved." The officer reiterates that appellee was driving and "Ivan" was the passenger in the front seat of

5

the SUV. And appellee tells the officer that there were "three more people." The officer asks what time appellee and "Ivan" left the club, and appellee responds, "When it closed." The officer asks appellee where he drove after leaving the club, and appellee states that he went "back to the neighborhood" and picked up "three people" they "saw . . . in the street." The officer asks appellee what they did next, and appellee says that they "went to pick somebody else up." When asked who was picked up, appellee states that he did not know the person, but he was a relative of one of the people in the car. The officers then ask appellee, what happened next, and appellee states, "What about my lawyer right there"[8] and "I want to make sure that I am going to be benefitted. That's why I need a lawyer."[9] The officers respond that appellee has been corroborating what they already know, and the other officer states that appellee has not told them "who pulled the trigger" and the "circumstances behind why the trigger was pulled."

The first law enforcement officer then asks appellee about the firearm involved and to whom the firearm belonged. Appellee replies that it belonged to one of the "other boys" and they said that they had stolen it. The officer asks appellee whether "Ivan" was "the one who used the gun." And appellee responds, "Yup."

---

[8]     Appellee makes this statement about nineteen minutes into the videotaped recording and about six minutes after stating that he did not "want to snitch without a lawyer."

[9]     Appellee makes this statement about twenty minutes and forty seconds into the videotaped recording and about seven minutes and thirty seconds after stating that he did not "want to snitch without a lawyer."

6

The law enforcement officer reiterates that the officers "do not want to take [appellee's] mother and father to jail" or "take [appellee's] little brother to jail," but the officers "have to have information from [appellee]" and "unfortunately, [appellee's little brother is] wrapped up in it." The law enforcement officers question appellee about "[the] homicide" for another thirty-eight minutes. The videotaped recording shows that the law enforcement officers' interview with appellee lasted about sixty-one minutes.

After reviewing the videotaped recording, the trial court listed the "three statements [by appellee that it] found invoke[ed] [the right to] counsel." The first statement by appellee, which occurs about thirteen minutes and ten seconds into the videotape recording, was: "I don't want to snitch without a lawyer." (Internal quotations omitted.) The second statement by appellee, which occurs about nineteen minutes into the videotaped recording, was: "What about my lawyer right there." (Internal quotations omitted.) The third statement by appellee, which occurs about twenty minutes and forty seconds into the videotaped recording, was: "I want to make sure that I am going to be benefitted. That's why I need a lawyer."

Following the suppression hearing, the trial court, without specifying the grounds, granted appellee's motion to suppress the videotape recording of appellee's oral statement to law enforcement officers.

## Motion to Suppress

In its sole issue, the State argues that the trial court erred in granting appellee's motion to suppress the videotape recording of appellee's oral statement to law enforcement officers because appellee did not unequivocally and unambiguously invoke his right to counsel while being interviewed by the law enforcement officers.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *See Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion and the trial court's application of the law to the facts de novo. *Id.* At a suppression hearing, the trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility, and it may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When, as here, a trial court does not make explicit findings of fact, we review the evidence in a light most favorable to the trial court's ruling, and we assume that the trial court made implied findings of fact that support its ruling as long as those findings are supported by the record. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35–36 (Tex. Crim. App. 2017); *see also Walter v. State*, 28 S.W.3d 538, 540 (Tex. Crim. App. 2000). We give almost total deference to a trial court's implied findings, especially those based on an evaluation of witness credibility or demeanor. *Valtierra v. State*,

8

310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* at 447–48. This is so even if the trial court gives the wrong reason for its decision. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003); *State v. Brabson*, 899 S.W.2d 741, 745–46 (Tex. App.—Dallas 1995) (stating, in context of reviewing trial court order granting motion to suppress, appellate court "cannot limit [its] review of the [trial] court's ruling to the ground upon which [the trial court] relied" and it "must review the record to determine if there is any valid basis upon which to affirm the [trial] court's ruling"), *aff'd*, 976 S.W.2d 182 (Tex. Crim. App. 1998).

The Fifth Amendment prohibits the government from compelling a criminal defendant to make statements incriminating himself. *See* U.S. CONST. amends. V, XIV; *see also Edwards v. Arizona*, 451 U.S. 477, 481–82 (1981). The United States Supreme Court has "crafted safeguards to protect th[e] 'privilege against self-incrimination' in the inherently coercive atmosphere of custodial interrogations." *Pecina v. State*, 361 S.W.3d 68, 74–75 (Tex. Crim. App. 2012) (quoting *Miranda v. Arizona*, 384 U.S. 436, 441 (1966)). To protect the privilege against self-incrimination, law enforcement officers "may not conduct a custodial interrogation of a suspect who has requested the assistance of counsel." *Gaitan v. State*, 533 S.W.3d 19, 27 (Tex. App.—Corpus Christi–Edinburg 2016, pet. ref'd);

*see also State v. Soto*, Nos. 04-19-00427-CR to 04-19-00429-CR, 2020 WL 6293451, at *3 (Tex. App.—San Antonio Oct. 28, 2020, pet. ref'd) (mem. op., not designated for publication) ("The right to counsel during custodial interrogation was created as a procedural safeguard to 'insure that the right against compulsory self-incrimination was protected.'" (quoting *Michigan v. Tucker*, 417 U.S. 433, 444 (1973))); *Mbugua v. State*, 312 S.W.3d 657, 663 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("Under the Fifth Amendment of the United States Constitution, an accused has the right to have an attorney present during custodial interrogation."). Thus, "once a defendant in custody asks to speak with a lawyer, all interrogation must cease until a lawyer is present" or the defendant himself reinitiates a dialogue with law enforcement officers. *Rhode Island v. Innus*, 446 U.S. 291, 293 (1980); *State v. Gobert*, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009); *see also Edwards*, 451 U.S. at 484–85; *Flores v. State*, 299 S.W.3d 843, 852 (Tex. App.—El Paso 2009, pet. ref'd); *Mbugua*, 312 S.W.3d at 663–64 ("Once an accused has invoked that right, police interrogation must stop until counsel has been made available or the accused himself initiates a dialogue with the police."). When law enforcement officers fail to cease their interrogation in violation of a defendant's Fifth Amendment right to counsel, the State may not use the defendant's statement during the prosecution of its case. *See Jones v. State*, 119 S.W.3d 766, 772 (Tex. Crim. App. 2003); *Ochoa v. State*, 573 S.W.2d 796, 801 (Tex. Crim. App. 1978); *see also*

10

*Williams v. State*, No. 01-13-00111-CR, 2014 WL 1612399, at \*8 (Tex. App.—Houston [1st Dist.] Apr. 22, 2014, no pet.) (mem. op., not designated for publication).

The right to counsel is invoked when a defendant indicates that he desires to speak to an attorney or to have an attorney present during questioning. *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995); *see also Bernard v. State*, No. 01-18-00876-CR, 2019 WL 6869328, at \*4 (Tex. App.—Houston [1st Dist.] Dec. 17, 2019, pet. ref'd) (mem. op., not designated for publication). Yet not every mention of a lawyer will suffice to invoke the Fifth Amendment right to counsel during questioning. *Gobert*, 275 S.W.3d at 892; *Dinkins*, 894 S.W.2d at 351; *see also Bernard*, 2019 WL 6869328, at \*4 ("The use of the word 'attorney' or 'lawyer' does not, in and of itself, invoke the right to counsel."). An ambiguous or equivocal statement about counsel does not require law enforcement officers to halt their interrogation or even seek clarification. *Gobert*, 275 S.W.3d at 892; *see also Mbugua*, 312 S.W.3d at 664 ("[A] person in custody must unambiguously and unequivocally invoke his right to counsel before interrogation must cease."). When reviewing an alleged invocation of the right to counsel, we look at the statement itself and the totality of the circumstances surrounding the statement to determine whether the defendant's statement constitutes an actual invocation of the right to counsel. *Dinkins*, 894 S.W.2d at 351; *see also Gobert*, 275 S.W.3d at 892. The test

11

is an objective one: whether the defendant articulated his desire for the assistance of counsel sufficiently clearly that a reasonable law enforcement officer in the circumstances would understand the statement to be a request for an attorney. *Gobert*, 275 S.W.3d at 892–93; *Dinkins*, 894 S.W.2d at 351–52; *Mbugua*, 312 S.W.3d at 664. While there are no "magical words" required to invoke a defendant's right to counsel, at a minimum, a defendant must "express a definite desire to speak to someone, and [for] that person [to] be an attorney." *Dinkins*, 894 S.W.2d at 352 (internal quotations omitted); *see also Lucas v. State*, 791 S.W.2d 35, 45 (Tex. Crim. App. 1989) ("The right to counsel is considered invoked where a person indicates he or she desires to speak to an attorney or have an attorney present during questioning.").

The State asserts that appellee's statement, "I don't want to snitch without a lawyer," was not an unambiguous invocation of his Fifth Amendment right to counsel because the word "snitch" is informal or slang and "it is not exactly clear when a criminal defendant snitches," thus, making the term "snitch" itself ambiguous. (Internal quotations omitted.) Further, appellee's statement only indicated that his "desire for an attorney [was] condition[ed] on when he snitche[d]," and it was not a blanket request for an attorney. (Internal quotations omitted.)

The videotaped recording shows that about seven minutes and thirty seconds into appellee's interview with law enforcement officers, one of the officers reads

appellee the required *Miranda* and Texas Code of Criminal Procedure article 38.22 warnings, which included informing appellee of his right to have an attorney present and advise him before and during any questioning by law enforcement officers. *See Gobert*, 275 S.W.3d at 892 ("Among the rights about which the police must advise a suspect whom they have arrested is the right to have counsel present during any police-initiated interrogation."); *Coffey v. State*, 435 S.W.3d 834, 841–43 (Tex. App.—Texarkana 2014, pet. ref'd) (holding defendant was not informed he had right to have attorney present during questioning, as required by *Miranda* and Texas Code of Criminal Procedure article 38.22); *see also Soto*, 2020 WL 6293451, at *3 ("Under the Fifth Amendment, an accused has the right to consult with an attorney and to have an attorney present during a custodial interrogation and the police must explain this right to the accused before questioning begins."). After reading the required *Miranda* and article 38.22 warnings, the law enforcement officer tells appellee that the officers want to talk to him about "a homicide," and they "don't want [appellee's] . . . younger brother" "to be wrapped up in [it]." The law enforcement officer also tells appellee that the officers need details on "who was involved," "who was driving," "the facts," and "what happened" because he has a "big problem" as he "does not want to put [appellee's] mother and father in jail if [he] doesn't have to." The law enforcement officer next asks appellee to "explain to [the officers], . . . within th[e] last week when [appellee] and Ivan were together,

what happened." Appellee responds, "[H]ow many people are y'all putting in the car?" And the officer states, "I want you to tell me." Appellee replies, "I don't want to snitch without a lawyer."

A "snitch" is a person "who supplies law-enforcement officers with information in hopes of receiving lenient treatment." *Snitch*, BLACK'S LAW DICTIONARY (11th ed. 2019). To "snitch" means to inform or tattle, particularly to law enforcement officers. *See Metro. Transit Auth. of Harris Cty. v. Williams*, No. 01-17-00724-CV, 2018 WL 541932, at *3 (Tex. App.—Houston [1st Dist.] Jan. 25, 2018, pet. denied) (mem. op.) (defining "[s]nitch" as to report on someone or to "inform on someone" (internal quotations omitted)); *Hill v. Herald-Post Publ'g Co.*, 877 S.W.2d 774, 778–79 (Tex. App.—El Paso 1994), *aff'd in part*, *rev'd in part on other grounds*, 891 S.W.2d 638 (Tex. 1994); *Snitch*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2014) (defining "snitch" as "inform" or "tattle"); *see also Myers v. State*, Nos. 09-14-00365-CR, 09-14-00366-CR, 2015 WL 4571380, at *2 (Tex. App.—Beaumont July 29, 2015, no pet.) (mem. op., not designated for publication) (witness testified he was known as "[a] snitch[]" because he had "given law enforcement information" (internal quotations omitted)); *Webb v. State*, No. 08-11-00126-CR, 2013 WL 1229012, at *2 n.5 (Tex. App.—El Paso Mar. 27, 2013, pet. ref'd) (mem. op., not designated for publication) (witness testified term "snitch" meant "talking to or cooperating with law enforcement in their

14

investigations" (internal quotations omitted)); *Blue v. State*, No. 04-11-00726-CR, 2012 WL 4095988, at *1 (Tex. App.—San Antonio Sept. 19, 2012, pet. ref'd) (mem. op., not designated for publication) (law enforcement officer testified that "people were not willing to talk to the police for fear of being labeled a 'snitch'"); *Bell v. State*, No. 01-10-0143-CR, 2012 WL 761187, at *2 (Tex. App.—Houston [1st Dist.] Mar. 8, 2012, pet. ref'd) (mem. op., not designated for publication) (witness testified that she did not speak to law enforcement officers initially because she did not want to be considered "a snitch" (internal quotations omitted)).

At the hearing on appellee's motion to suppress, the trial court, when discussing appellee's invocation of his right to counsel through the statement, "I don't want to snitch without a lawyer," explained: "I think if we removed the word 'snitch' and turned it into 'talk to the police,' I don't think there would be any question about whether or not th[ere] was an invocation. I think that's a matter of vernacular. . . . [W]hat he is saying is, I need a lawyer to protect me so when I tell you this stuff, I'm going to get something out of it. . . . [T]his seems very obvious what he's saying is, I want a lawyer before I talk to the cops because I know I need a lawyer to protect me."

Under Texas law, there are no "magical words" required for a defendant to invoke his right to counsel. *Dinkins*, 894 S.W.2d at 352 (internal quotations omitted). Instead, the right to counsel is invoked when a defendant indicates that he

15

desires to speak to an attorney or to have an attorney present during questioning. *Id.* at 351; *see also Bernard*, 2019 WL 6869328, at \*4. In response to law enforcement officers' questions about the details of "a homicide," appellee told the officers: "I don't want to snitch without a lawyer," meaning appellee did not want to talk to law enforcement officers about "[the] homicide" without a lawyer. *See Ochoa*, 573 S.W.2d at 800–01 ("Although [defendant] did not make a 'formal request' or absolute demand for a lawyer, he did in some manner indicate to [the law enforcement officer] that he wanted to exercise his right to counsel. This was sufficient to require a cessation of interrogation."). Appellee's statement was an unambiguous and unequivocal invocation of his right to counsel, and it is not unlike the statements made by the defendants in other cases in which courts have held that the defendant clearly invoked his right to counsel. *See Jones v. State*, 742 S.W.2d 398, 405–06 (Tex. Crim. App. 1987) (defendant's statement, "I think I want a lawyer," was clear and unequivocal assertion of her right to consult with counsel (internal quotations omitted)); *Ochoa*, 573 S.W.2d 799–801 (defendant's statement "that he probably ought to talk to a lawyer or . . . didn't want to sign anything until he talked to a lawyer" was sufficient to invoke his right to counsel and required cessation of interrogation); *Goodnough v. State*, 627 S.W.2d 841, 843–44 (Tex. App.—San Antonio 1982, pet. ref'd) (defendant invoked right to counsel by stating, "I might better talk to a lawyer first" (internal quotations omitted)); *see also Davis*

*v. United States*, 512 U.S. 452, 455 (1994) (questioning by law enforcement ceased when defendant said, "I think I want a lawyer before I say anything else" (internal quotations omitted)); *United States v. Johnson*, 400 F.3d 187, 195–97 (4th Cir. 2005) (defendant unequivocally invoked right to counsel by asserting that he did not want to make statement without lawyer); *Tindle v. United States*, 778 A.2d 1077, 1083–84 (D.C. 2001) (defendant clearly invoked right to counsel by asserting he did not want to make statement without lawyer); *United States v. McCluskey*, 893 F. Supp. 2d 1117, 1122, 1138–39 (D.N.M. 2012) (defendant's statement, "I don't want to talk to nobody without a lawyer," constituted "an unambiguous and unequivocal invocation of his *Miranda* right to counsel" (internal quotations omitted)); *cf. Miranda*, 384 U.S. at 444–45 (there can be no questioning if defendant indicates in any manner and at any stage of interrogation process that he wishes to consult with attorney).  Here, appellee expressed a definite desire to speak to someone and for that person to be an attorney.  *See Dinkins*, 894 S.W.2d at 352; *see also Davis*, 512 U.S. at 459 (invocation of right to counsel requires "some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney" (internal quotations omitted)).

The State asserts that this case is like *Molina v. State*, in which a defendant sought to have his statements to law enforcement officers suppressed because he had purportedly invoked his right to counsel.  450 S.W.3d 540, 545 (Tex. App.—

Houston [14th Dist.] 2014, no pet.). In that case, the defendant, while in custody, was interviewed by law enforcement officers about "a double murder." *Id.* at 545–46. The defendant, during the interview, stated: "If I'm getting blamed for something like that well shit I'm going to just go ahead and call my lawyer," but law enforcement officers did not cease their interrogation. *Id.* The trial court found that the defendant's statement was not a clear and unambiguous invocation of his right to counsel. *Id.* On appeal, the Fourteenth Court of Appeals agreed, reasoning that the defendant's "statement was not in the form of a request, nor did [the defendant] expressly say that he wanted a lawyer." *Id.* at 547. Thus, the court held, under the circumstances in the case, that the defendant's statement was not a clear and unambiguous request for counsel. *Id.*

*Molina* is distinguishable, particularly because here, appellee did "expressly say that he wanted a lawyer." *Cf. id.* And we do not agree with the State's assertion that appellee's expressed desire for an attorney was conditional, a point which the defendant conceded in *Molina*.[10] *See id.*

Examining appellee's statement and the totality of the circumstances, we conclude that appellee articulated his desire for the assistance of counsel sufficiently

---

[10] Even if appellee's statement, "I don't want to snitch without a lawyer," could be construed as conditional, just because a statement is conditional does not mean it is equivocal, ambiguous, or otherwise unclear. *See State v. Gobert*, 275 S.W.3d 888, 893 (Tex. Crim. App. 2009); *see also Trejo v. State*, 594 S.W.3d 790, 797–98 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

18

clear that a reasonable law enforcement officer in the circumstances would have understood that the statement was a request for an attorney. *See Gobert*, 275 S.W.3d at 892–93; *Dinkins*, 894 S.W.2d at 351–52; *Mbugua*, 312 S.W.3d at 664. We also conclude that appellee unambiguously and unequivocally invoked his right to counsel and the law enforcement officers conducting the interview had a duty to terminate their interrogation. *See Davis*, 512 U.S. at 454; *Gobert*, 275 S.W.3d at 892. Because they did not do so, we hold that the trial court did not err in granting appellee's motion to suppress the videotape recording of appellee's oral statement to law enforcement officers.[11] *See Ochoa*, 573 S.W.2d at 800 ("[T]his Court must conclude that if [the defendant] in any manner indicated his desire to have a lawyer, the continued interrogation was a violation of his *Miranda* rights and the confession obtained therefrom is inadmissible." (emphasis added)).

We overrule the State's sole issue.[12]

---

[11]    The State does not assert in its brief that appellee, after stating, "I don't want to snitch without a lawyer," reinitiated a dialogue with the law enforcement officers. *See Rhode Island v. Innus*, 446 U.S. 291, 293 (1980); *Gobert*, 275 S.W.3d at 892; *see also Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981); *Flores v. State*, 299 S.W.3d 843, 852 (Tex. App.—El Paso 2009, pet. ref'd); *Mbugua v. State*, 312 S.W.3d 657, 663–64 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("Once an accused has invoked that right, police interrogation must stop until counsel has been made available or the accused himself initiates a dialogue with the police."). Instead, the State only argues, in regard to this particular statement by appellee, that the statement did not constitute an unambiguous invocation of appellee's right to counsel. *See* TEX. R. APP. P. 38.1(i).

[12]    Due to our disposition, we need not address the State's assertions that appellee's later interview statements about a "lawyer" did not constitute invocations of his right to counsel. *See* TEX. R. APP. P. 47.1. We also need not address the State's

19

**Conclusion**

We affirm the order of the trial court.

Julie Countiss
Justice

Panel consists of Justices Hightower, Landau, and Countiss.

Publish. TEX. R. APP. P. 47.2(b).

---

argument in its reply brief that appellee's confession was not involuntary or consider whether that argument is properly before this Court. *See id.*; *see also Deutsch v. State*, 566 S.W.3d 332, 341 n.9 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (appellate court need not consider arguments raised for first time in reply brief); *Barrios v. State*, 27 S.W.3d 313, 321–23 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (appellant not entitled to relief on issue raised for first time in reply brief).