**Affirmed and Opinion filed October 30, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00436-CR

---

## ALEX MOLINA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the 180th District Court
### Harris County, Texas
### Trial Court Cause No. 1314365

---

## O P I N I O N

Appellant Alex Molina was convicted by a jury of capital murder and sentenced to confinement for life in the Texas Department of Criminal Justice, Institutional Division. On appeal, appellant contends that the trial court erred by failing to suppress a portion of his recorded statement, submitting an erroneous charge, denying confrontation and cross-examination of a witness, limiting cross-examination of a witness as to bias, and excluding evidence of a prior act of aggression by a complainant. We affirm.

## FACTUAL BACKGROUND

Early in the morning on July 24, 2011, Roland Vargas and his common-law wife, Elizabeth Sandoval, decided to celebrate Sandoval's birthday at an after-hours club called La Cave. The club was located near the intersection of FM 1960 and Veterans Memorial Drive in Harris County. Vargas and Sandoval, accompanied by Vargas's cousin, Lee Hernandez, drove to the club in Vargas's black Impala. When they arrived at around 2:30 a.m., they were met by some of Vargas's friends.

Inside the club, an altercation ensued between Vargas's group and another group that included appellant and his friend, Christopher Garcia. Vargas's group was eventually ejected from the club. In the parking lot, security guards directed them to get in their cars and leave the property, but Vargas and Hernandez were angry and demanded to be allowed back inside. Sometime later, while Vargas's group was still in the parking lot, appellant and his group emerged from the club, and the altercation between the two groups continued in the parking lot. Although accounts varied, security guards reported that the two groups were yelling at each other, but no physical contact occurred and no weapons were displayed.

During the exchange, appellant borrowed a cell phone to call another friend, David Salinas. Appellant directed Salinas to come to the club and bring the "chopper," meaning an AK-47 assault rifle. Salinas and his girlfriend, Angelica Cavazos, arrived in Salinas's silver Dodge truck and picked up appellant. Salinas's fully automatic AK-47, equipped with a clip containing 29 rounds, was in the back seat. Appellant's friend Garcia and several others then left the club in Garcia's Nissan Altima, followed by Salinas, Cavazos, and appellant in Salinas's truck. Vargas, Sandoval, and Hernandez left the club immediately after them and drove in the same direction as Salinas's truck.

2

Witness accounts of what happened next differ, but evidence shows that Garcia's Altima and Salinas's truck turned right onto Veterans Memorial as Vargas's Impala followed behind them. In the truck, Salinas was driving, appellant was in the front passenger seat, and Cavazos was in the backseat. In the Impala, Vargas was driving, while Hernandez and Sandoval were in the backseat, with Hernandez on the driver's side and Sandoval on the passenger side. As the Impala approached the left side of the truck, appellant rolled down his window, maneuvered his upper body outside of the passenger-side window, and opened fire on the Impala with the AK-47, hitting the Impala numerous times. Both the truck and the Altima fled as the Impala came to a stop and police arrived at the scene. Vargas and Hernandez were mortally wounded by the gunshots, but Sandoval, grazed by bullets, survived.

Appellant was charged with capital murder and arrested. After appellant's arrest, police conducted a recorded interview with him, in which he denied any involvement in the shooting. At trial, appellant pleaded "not guilty" and asserted that he acted in self-defense and in defense of third persons.

The guilt-innocence phase of the trial lasted seven days and included testimony from numerous witnesses, including Sandoval. An eyewitness to the shooting, Lashunda Philio, also testified. Philio was the manager of a nearby Starbucks who witnessed the shooting from the Starbucks' parking lot. She positively identified appellant as the shooter based in part on his distinctive tattoos. David Salinas, who pleaded guilty to murder in the shootings of the complainants, also testified for the State. Three passengers in the Altima driven by Christopher Garcia testified for the defense. No weapon other than the AK-47 was found at the scene, and there was no physical evidence that anyone in the Impala fired at the truck.

The jury rejected appellant's self-defense theories and found him guilty of capital murder in the deaths of Vargas and Hernandez. On appeal, appellant does not challenge the sufficiency of the evidence supporting his conviction.

**ANALYSIS OF APPELLANT'S ISSUES**

On appeal, appellant contends that the trial court erred by: (1) overruling in part appellant's motion to suppress a portion of his recorded statement made after a request for counsel; (2) failing to properly instruct the jury to apply the law of parties to self-defense and defense of third persons; (3) denying confrontation and cross-examination of an expert witness; (4) limiting cross-examination of his co-defendant as to bias; and (5) preventing appellant from eliciting evidence of a prior act of aggression by one of the complainants. The State has not filed a brief.

## I.     Appellant's Motion to Suppress

At a pretrial hearing, appellant argued that portions of his statement should be suppressed because he invoked his right to counsel. The trial court granted the motion in part and denied it in part and filed findings of fact and conclusions of law. In making a ruling, the trial court considered the video of appellant's statement, the transcription of the statement, and the testimony of Deputy Carrizal, a homicide investigator for the Harris County Sheriff's Office. Although the trial court suppressed everything after line 171 of the transcript, appellant contends the trial court should have suppressed everything after line 87 because he made conditional, but unambigous, requests for counsel.

While in custody, appellant was interviewed by Deputy Carrizal and his partner, Sergeant Dousay of the Harris County Sheriff's Department. The recorded interview shows that Carrizal advised appellant of his constitutional and statutory rights. Appellant acknowledged he understood his rights and voluntarily agreed to

4

speak to the deputies. Appellant then wanted to know why he was there and said that an officer outside had informed him it was about capital murder. Carrizal explained that he and his partner were investigating a double murder off FM 1960 and Veterans Memorial on July 24, and asked appellant if he had been at La Cave that night. Appellant denied being at the club or even knowing where it was. At line 87, appellant stated, "If I'm getting blamed for something like that well shit I'm going to just go ahead and call my lawyer." Carrizal responded, saying "OK, well I'm just asking if you were at the club. We need to clear things up. That's why we're here." Appellant stated that he wanted to know why his name had come up and he wanted to know "all the details." Appellant then said, at line 101, "And to that I'll see if I speak, if not then I'm going to need my lawyer." Carrizal explained that his investigation showed that there had been an argument at the club, people involved were later shot and killed in their vehicle after leaving the club, and witnesses had identified appellant as being in the argument. Appellant again denied having been in the club. When Carrizal also mentioned that there was video evidence, appellant said, at line 155, "If y'all got videos [and] if y'all got all that then I'll wait until my lawyer comes in" and again denied being at the club. After a brief exchange between Dousay and appellant, at line 171, appellant said, "I want to wait for my lawyer then."

The trial court found that appellant's references to an attorney at lines 87 and 101 were not a clear and unambiguous invocation of the right to counsel, and overruled appellant's motion to suppress to that extent. However, the trial court found that appellant had clearly invoked his right to counsel at line 171, and granted appellant's motion to suppress the remainder of his statement.

5

### A. Standard of review and applicable law

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's findings of historical fact and reviewing de novo the trial court's application of the law. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). When the trial judge makes express findings of fact, we view the evidence in the light most favorable to his ruling and determine whether the evidence supports these factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We will sustain the trial court's ruling if that ruling is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* at 447–48.

Appellant argues that police violated his Fifth Amendment right to counsel during the custodial interrogation. *See* U.S. Const. amends. V, XIV; *Miranda v. Arizona*, 384 U.S. 436, 467 (1966); *see also* Tex. Code Crim. Proc. art. 38.22. The right to counsel is considered invoked when a person indicates that he desires to speak to an attorney or to have an attorney present during questioning. *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995). "An invocation must be clear and unambiguous; the mere mention of the word 'attorney' or 'lawyer' without more, does not automatically invoke the right to counsel." *Id.*; *Russell v. State*, 727 S.W.2d 573, 575–76 (Tex. Crim. App. 1987). If the suspect makes an ambiguous or equivocal reference to an attorney that a reasonable officer in light of the circumstances would have understood only as possibly invoking the right to counsel, questioning need not cease. *Davis v. United States*, 512 U.S. 452, 459 (1994).

We review the totality of the circumstances surrounding the interrogation, as well as the alleged invocation, to determine whether a suspect's statement can be construed as an actual invocation of his right to counsel. *Dinkins*, 894 S.W.2d at

351. The test is objective: whether the suspect articulated his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. *Davis v. State*, 313 S.W.3d 317, 339 (Tex. Crim. App. 2010). If a defendant clearly invokes his right to counsel, all interrogation by the police must cease until counsel is provided or until the suspect initiates further conversation. *Davis*, 512 U.S. at 458; *State v. Gobert*, 275 S.W.3d 888, 893 (Tex. Crim. App. 2009). Further questioning may not be used to cast doubt retrospectively on the clarity of his initial request. *Davis*, 313 S.W.3d at 339.

## B.      Appellant did not unambiguously invoke his right to counsel

Appellant cites *Gobert* to support his contention that his requests for counsel at lines 87, 101, and 155 were conditional but not ambiguous. *See Gobert*, 275 S.W.3d at 893 ("Just because a statement is conditional does not mean it is equivocal, ambiguous, or otherwise unclear."). In *Gobert*, after the appellant was asked whether he understood his *Miranda* rights, he stated, "I don't want to give up any right though, if I don't got no lawyer." *Id.* at 889–90. The Court of Criminal Appeals construed the statement as an indirect expression of the appellant's possible willingness to waive his rights, but only on the unqualified condition that he first be afforded his right to have counsel present. *Id.* at 893. Because the officers continued to interrogate him in the absence of counsel, appellant's right to counsel was violated. *Id.* at 894.

At line 87, appellant said, "If I'm getting blamed for something like that . . . I'm going to just go ahead and call my lawyer." Appellant argues that because he and the officers "well knew" that appellant was "getting blamed" for the murders, no reasonable police officer could interpret his statement as anything other than a clear invocation of the right to counsel. We conclude, however, that appellant's

statement is distinguishable from that in *Gobert* and insufficient to clearly and unambiguously invoke his right to counsel.

In this case, appellant agreed to answer questions, conditionally referred to calling his lawyer, and then continued to request additional information about the case and answer the investigators' questions. Appellant's statement was not in the form of a request, nor did appellant expressly say that he wanted a lawyer. We hold that, under the circumstances presented here, appellant's statement was not a clear and unambiguous request for counsel. *See Davis*, 313 S.W.3d at 341 (holding that appellant's statement that "I should have an attorney" was not a request for an attorney when he did not make a request for or expressly say he wanted a lawyer, and he subsequently asked detectives why he should help them out).

Appellant also argues that his statement at line 101 that he was going to need a lawyer if the police were not going to share the details is a conditional but unequivocal request for a lawyer. We conclude that the statement was equivocal because it was predicated on obtaining more details about the murders. Carrizal testified that appellant was asking him a question, which he understood as a request "to hear more information about what I have to say." Further, the record reflects that the investigators satisfied any condition by providing additional details and information as requested. *See Connecticut v. Barrett*, 479 U.S. 523, 528–29 (1987) (holding that no violation of suspect's rights occurred when suspect made only a limited request for counsel and interrogating officers honored that limitation); *Gobert*, 275 S.W.3d at 893 ("[W]hen a suspect makes a clear, but limited, invocation of the right to counsel, the police must honor the limits that are thereby placed upon the interrogation, but they may question their suspect outside the presence of counsel to the extent that his clearly expressed limitations permit.").

8

Lastly, appellant points to his statement at line 155, "If ya'll got videos [and] if y'all got all that then I'll wait till my lawyer comes in." According to appellant, this was also a conditional, yet unambiguous request for counsel because he was relying on the investigators' representation that they had video of appellant. But this statement is similar to appellant's other equivocal statements discussed above, because it was neither phrased as a request for counsel nor an express statement that appellant wanted a lawyer. *See Davis*, 313 S.W.3d at 341. In contrast, shortly after this statement, appellant unequivocally says, "I want to wait for my lawyer then." At this point, the trial court concluded that he clearly and unambiguously requested a lawyer. Viewing the totality of the circumstances and the statements themselves, we hold that the trial court did not err when it failed to suppress all of the statements after line 87. We overrule appellant's first issue.

## II.    The Jury Charge on Self-Defense and Defense of Third Persons

In his second issue, appellant contends that, although the trial court's charge instructed the jury on the defenses of self-defense and defense of third persons, the charge failed to apply the law of parties to self-defense and defense of third persons. In his brief, appellant acknowledges that he did not object to the charge on this basis or request an instruction applying the law of parties to his defensive issues.

### A.    Jury charge error

The trial judge has the duty to instruct the jury on the law applicable to the case, even if defense counsel fails to object to inclusions or exclusions in the charge. *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). But the trial judge has no duty to instruct the jury on unrequested defensive issues, and a defendant may not complain on appeal about the trial judge's failure to include a defensive instruction not preserved by request or objection. *Id.* (citing *Posey v.*

9

*State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998).

However, if the trial judge does charge on a defensive issue, but fails to do so correctly, this is charge error subject to review under *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985). *Id.*; *Barrera v. State*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998). Accordingly, if the defendant objected at trial, reversal is required if the accused suffered "some harm" from the error. *Vega*, 394 S.W.3d at 519 (citing *Almanza*, 686 S.W.2d at 171)). If no proper objection was made, as in this case, a reversal is required only if the error caused "egregious harm." *Id.*

Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). In examining the record for egregious harm, we should consider the entire jury charge, the state of the evidence, including the contested issues and the weight of the probative evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Id.* The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

## B.   Appellant was not egregiously harmed by the charge

The trial court's charge instructed the jury on the law of parties and self-defense, including defense of third persons, in the abstract paragraphs. The application paragraph of the charge on capital murder authorized the jury to find appellant guilty of capital murder if it found that appellant shot the complainants himself, or that David Salinas and/or Christopher Garcia shot the complainants and appellant was a party to the shootings. In the application paragraph on self-defense, however, the charge authorized the jury to find appellant not guilty only if appellant himself shot the complainants.

Appellant argues that the charge was erroneous because the jury was authorized to convict him of capital murder as either a principal or a party, but the jury was authorized to find that he acted in self-defense or in defense of third persons only if appellant himself did the shooting. He also argues that he was egregiously harmed by this error because the self-defense issues were contested and there was conflicting evidence concerning whether the complainants had a gun or had fired shots before appellant reached for the AK-47. But the record also reflects that the defense offered no argument or evidence that someone other than appellant was the shooter.

"When a definition or instruction on a defensive theory of law . . . is given in the abstract portion of the charge, the application paragraph must list the specific conditions under which a jury is authorized to acquit." *Vega*, 394 S.W.3d at 520; *see also Schiffert v. State*, 257 S.W.3d 6, 13 (Tex. App.—Fort Worth 2008, pet. dism'd) (holding that charge which incorrectly applied the law of parties to self-defense instruction was erroneous). Assuming that the charge in this case erroneously failed to apply the law of parties to appellant's defensive issues, we hold that appellant cannot show egregious harm because the evidence summarized above supports appellant's guilt as a principal. *See Vega*, 394 S.W.3d at 521–22 (applying *Almanza* factors to conclude appellant suffered no egregious harm); *Ladd v. State*, 3 S.W.3d 547, 564–65 (Tex. Crim. App. 1999) (stating that when the evidence clearly supports a defendant's guilt as a principal actor, "any error of the trial court in charging on the law of parties is harmless"). We overrule appellant's second issue.

## III. Confrontation and Cross-examination of Expert Witness

In this issue, appellant contends that the trial court erred in overruling his objections to the testimony of William Davis, a chemist and director of the

physical evidence department of the Harris County Medical Examiner's office. After independently analyzing gunshot residue reports prepared by others in his office, Davis testified that no gunshot residue was found on anyone in Vargas's car. Appellant invokes the Supreme Court's decision in *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), to argue that Davis's testimony violated his Sixth Amendment right to confront and cross-examine his accusers because Davis did not prepare the reports himself and therefore had no personal knowledge on which to be cross-examined.

## A.      The applicable law

The Confrontation Clause affords a criminal defendant the right to confront the witnesses against him. U.S. Const. amend. VI; *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013). Testimonial evidence is inadmissible unless (1) the witness appears at trial and is cross-examined or (2) the witness is unavailable and the defense had an opportunity to cross-examine. *Burch*, 401 S.W.3d at 636. "[T]estimonial statements are those 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Id.* (quoting *Crawford v. Washington*, 541 U.S. 36, 52 (2004)). Forensic reports have been recognized as testimonial statements. *Burch*, 401 S.W.3d at 636–37.

In *Bullcoming*, the prosecution presented a forensic lab report certifying that the defendant's blood alcohol content was above the threshold for aggravated driving while intoxicated. 131 S. Ct. at 2709. Instead of calling the analyst who signed the report to testify, the prosecution called another analyst who was familiar with the lab's testing procedures, but had neither participated in nor observed the testing of the blood sample. *Id.* Because the report was the testimonial statement of the analyst who performed the tests, the Supreme Court held that it could not be

offered into evidence through the testimony of a "surrogate" witness. *Id.* at 2710.

Similarly, in *Burch*, the prosecution submitted a lab report signed by both the testing analyst and the reviewing supervisor certifying that four green Ziploc bags contained cocaine. *Burch*, 401 S.W.3d at 635. At trial, however, the prosecutor called only the supervisor to testify. *Id.* Although the supervisor testified that she reviewed the original process, she did not indicate whether she had personal knowledge that the tests were done correctly or that the analyst did not fabricate the results. *Id.* at 637. Further, the supervisor testified that the analyst who had performed all of the tests on the cocaine no longer worked for the lab, but she offered no explanation as to why the analyst was no longer employed, and there was no indication that the appellant had a pre-trial opportunity to cross-examine the analyst. *Id.* The Court of Criminal Appeals held that the reviewing supervisor's testimony did not satisfy the appellant's constitutional rights. *Id.*

## B. Davis independently analyzed the test results and was cross-examined concerning his opinions

Davis, a chemist, testified that he is the director of physical evidence at the Harris County Institute of Forensic Science, overseeing the firearms and trace-evidence sections. It is undisputed that Davis is an expert in gunshot-residue testing. Davis explained that samples submitted to the lab are tested using a scanning electron microscope to generate raw data concerning the presence of certain heavy metallic elements. The data is then analyzed to determine whether a specific combination of these elements indicates the presence of gunshot residue. Davis testified in detail concerning the testing procedure and protocols followed to ensure the accuracy of the tests. Davis also testified that, had the testing been performed incorrectly, particles of certain elements identified in the samples would not have appeared. In performing his analysis of the samples, Davis reviewed the

13

work of other analysts in the lab who performed the testing of the samples and obtained the data from the microscope.

Based on his independent analysis of the raw data as well as other information relating to the testing process, Davis testified that no gunshot residue was present on the samples taken from Sandoval, Vargas, and Hernandez. No written analysis was offered into evidence. Davis was also cross-examined at length concerning the basis for his opinions and the accuracy of the testing process. Because Davis independently analyzed the data and offered his own opinions, testified at length and was cross-examined concerning the basis for his opinions, and was not merely relying on the written analysis of others, this case is distinguishable from *Bullcoming* and *Burch* and does not support a holding that admitting Davis's testimony violated the Confrontation Clause. *See Paredes v. State*, 439 S.W.3d 522, 525–26 (Tex. App.—Houston [14th Dist.] 2014, pet. granted) (holding no violation of constitutional rights occurred when testifying expert independently developed her opinions from raw DNA data prepared by non-testifying analysts, testified at length and was cross-examined, and no hearsay documents were admitted into evidence). We overrule appellant's third issue.

## IV. Cross-Examination of Witness's Bias

In his fourth issue, appellant contends that the trial court erred in limiting his cross-examination of David Salinas as to bias. Salinas had pleaded guilty to murder of the complainants and was awaiting sentencing at the time of appellant's trial. Appellant complains that, although his counsel was allowed to cross-examine Salinas concerning his hopes for leniency in the pending charge,[1] counsel was not

---

[1] Before the jury, Salinas acknowledged his guilty plea on the murder charges, testified that he understood that the range of punishment he could receive from the trial court was 5 to 99 years in prison, and he also testified that his plea required him to testify truthfully. Salinas testified similarly concerning his guilty plea before the jury, and admitted to the jury that he was

14

allowed to inquire into Salinas's similar hopes regarding an unrelated federal methamphetamine charge under investigation.

The constitutional right of confrontation includes the right to cross-examine the witnesses and the opportunity to show that a witness is biased or that his testimony is exaggerated or unbelievable. *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010). Nonetheless, the trial judge retains wide latitude to impose reasonable limits on such cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)). To be admissible, the proponent of evidence regarding other pending charges against the witness must establish some causal connection or logical relationship between the charges and witness's testimony at trial. *See Carpenter v. State*, 979 S.W.2d 633, 634–35 (Tex. Crim. App. 1998). The proponent is not required to show actual bias, but is required to make a showing of the witness's potential for bias. *Id.* at 634 n.4.

Here, appellant points to Salinas's testimony, outside the jury's presence, that he knew he was being investigated by federal law enforcement concerning the sale of methamphetamine, and that he anticipated the federal authorities would not file a methamphetamine charge on him as a result of his testimony in this case. Viewing Salinas's testimony in its entirety, however, the trial court could have reasonably concluded that appellant failed to establish a causal connection or logical relationship between Salinas's testimony and the potential for bias as a result of a pending federal investigation.

Specifically, Salinas also testified that, although he had heard of the federal investigation, he was not aware of agreements with regard to any other cases.

hopeful that he would get the lowest possible sentence.

Concerning the possibility of a federal charge, Salinas testified that he did not know whether federal authorities would decline to charge him with the offense if he testified, although he acknowledged "hoping." On redirect by the prosecutor, however, Salinas affirmed that no one, including his attorney, had ever told him that his testimony would alter the result of the federal investigation, and he did not believe that was the case. Salinas also denied testifying for the purpose of altering the outcome in the federal investigation. In response to further defense questioning, Salinas explained that he had been confused by counsel's questioning and again denied that he would seek leniency from federal investigators based on his testimony in this case. Salinas's lawyer also represented to the trial court that he had no knowledge whether Salinas would be charged in a possible federal case because he had not spoken to any federal authorities, and that as far as he knew, Salinas had no expectation of receiving any benefit from testifying. At the conclusion of the hearing, the trial court denied defense counsel's request to cross-examine Salinas concerning potential bias resulting from the possible federal charge.

Appellant presented no evidence that any federal charge was actually pending against Salinas, and at most showed only that Salinas was being investigated for an unrelated federal methamphetamine charge. Although Salinas originally stated that he anticipated no federal charges would be filed as a result of his testimony in this case, he later testified that there was no agreement concerning leniency in the federal investigation if he testified and that he had no expectation of any leniency in that matter as a result. His attorney made similar representations to the trial court. We conclude that the trial court did not abuse its discretion in denying defense counsel's request to cross-examine Salinas concerning the possible federal charge. *See id.* at 634 n.4 ("Naked allegations which do no more

16

than establish the fact that unrelated federal charges are pending do not, in and of themselves, show a potential for bias."). We overrule appellant's fourth issue.

## V.     Exclusion of Evidence of a Prior Act of Aggression by a Complainant

In his fifth and final issue, appellant contends that the trial court erred by excluding evidence of a prior act of aggression by a complainant. One of the defense witnesses, Jorge Gonzalez, testified that during the continuation of the altercation in the La Cave parking lot, someone from the complainants' group threatened to "put three bullets" in Christopher Garcia's chest. The State objected on hearsay grounds, and the trial court sustained the objection. Appellant did not argue that any exception to the hearsay rule applied or that the testimony was otherwise admissible.

On appeal, appellant contends that the evidence is admissible because it is evidence of a pertinent character trait of the victim of a crime offered by the accused, and because specific instances of conduct are admissible in cases in which a person's character or character trait is an essential element of a charge, claim or defense. *See* Tex. R. Evid. 404(a)(2), 405(b); *Torres v. State*, 117 S.W.3d 891, 894 (Tex. Crim. App. 1983) ("When a defendant in a homicide prosecution raises the issue of self-defense, he may introduce evidence of the deceased's violent character."). However, once the State lodged its hearsay objection to Gonzalez's testimony, the burden shifted to appellant, as the proponent of the evidence, to demonstrate that it was admissible. Because appellant did not make the arguments he raises on appeal in the trial court, he has failed to preserve the complaint for our review. *See* Tex. R. App. P. 33.1(a)(1)(A); *Vinson v. State*, 252 S.W.3d 336, 340 (Tex. Crim. App. 2008) ("[O]nce an objection is made, the proponent must demonstrate that the proffered evidence overcomes the stated objection."); *see also Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (to preserve a

complaint about the trial court's exclusion of evidence, the proponent must tell the trial court "why the evidence was admissible"). Because appellant's challenge was not preserved, we do not address it. We overrule appellant's fifth issue.

## CONCLUSION

We overrule appellant's issues and affirm the trial court's judgment.


/s/    Ken Wise
Justice


Panel consists of Justices Boyce, Busby, and Wise.
Publish — TEX. R. APP. P. 47.2(b).