**Opinion issued August 4, 2022**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-19-00725-CR

—————————————

**EDDIE RAY CHARLES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Case No. 16-DCR-075041B

## MEMORANDUM OPINION

Appellant Eddie Ray Charles was convicted by a jury of continuous sexual

abuse of a child or children under the age of 14.[1] The trial court imposed a sentence

of 75 years' imprisonment. In three of his issues on appeal, Charles argues that the

---

[1]     TEX. PENAL CODE § 21.02(b).

trial court abused its discretion in failing to grant a mistrial after (1) the State commented on Charles's post-arrest silence, (2) the State violated *Brady* by failing to turn over exculpatory evidence until the middle of trial, and (3) the State's expert witness gave false testimony. Charles also argues that the trial court erred by refusing to admit evidence of one of the complainant's pending criminal charges.

We affirm.

## Background

Charles was charged with the offense of continuous sexual abuse of a child or children under the age of 14. At trial, one of the complainants, Kelly Goodman (pseudonym), testified that she was 12 years old when Charles, who was her cousin's husband, inappropriately touched her at a family birthday party. Goodman testified that, while the other adults were playing poker outside, Charles grabbed her arm and led her to the master bathroom, where he stood behind her, pressing his penis against her back. As he was standing behind Goodman, Charles "reached . . . slowly toward[] her genitals, and [she] pulled his hand away." Charles tried to touch Goodman's genitals a second time, more aggressively, but she again pushed his hand away. Goodman stated that Charles did not actually touch her genitals either time. Charles also tried to "grab[] [Goodman's] hand and . . . direct[] it towards where his penis would be," but she pulled her hand away. Charles stopped and the two left the bathroom after seeing Goodman's father stand up to leave the poker table outside.

2

About a week after this incident, Goodman made an outcry to her sixth-grade art teacher, Leah Stevens. Law enforcement became involved and forensic interviews of Goodman were conducted at the Children's Advocacy Center.

A second complainant, Christy Kerr (pseudonym), testified at trial that Charles, who was her stepfather, continuously sexually abused her from when she was in fourth grade until she was 12 or 13 years old. Charles would come into Kerr's room at night, get on top of her, "rub[] against [her] body," "grasp [her] body in inappropriate places, such as [her] vagina and [her] butt area," and penetrate her vagina with his penis. Kerr also described incidents where she would wake up in the middle of the night to find Charles "under her covers," "holding [her] thighs down," and putting "his tongue in [her] vagina." Kerr testified that this abuse occurred about six times a month from the time she was eight or nine years old until she was 12 or 13 years old. Kerr testified that she was scared to tell anyone what was happening but wrote about these incidents and kept her writings in a "safe place." In 2016, her father's girlfriend found Kerr's writings and involved law enforcement. Forensic interviews of Kerr were also conducted at the Children's Advocacy Center.

### Facts Relevant to the State's Comment on Charles's Post-Arrest Silence

Assistant Chief Jarrett Nethery of the Rosenberg Police Department testified that he investigated the allegations by Kerr and identified Charles as the suspect.

Nethery spoke with various witnesses and attempted to speak with Charles.

Regarding his attempt to speak with Charles, Nethery testified:

> STATE: After you collected [Kerr's] writings, you said you worked with other detectives and you were attempting to speak with Eddie Charles; is that right?
>
> NETHERY: Yes, ma'am.
>
> STATE: Were you able to locate Eddie Charles and ask him if he was willing to provide you a statement?
>
> NETHERY: Yes, ma'am.
>
> STATE: And did he, in fact, provide you a statement?
>
> NETHERY: No, ma'am.

Charles did not object at that time. At the conclusion of Nethery's direct examination, one of the prosecutors raised the issue at the bench in the following exchange:

> STATE: Judge, I had stepped out when you -- when the conversation was being posed with regards to the question regarding the defendant not providing a statement; and I believe there was an objection with regards to he was in custody at the time. I hope I'm not misunderstanding that.
>
> And I believe defense had asked if the Court would consider instructing the jury to disregard. I -- I believe defense was accurate in that the jury must be instructed to disregard that statement. I believe it is potentially reversible error if they're not instructed to disregard that statement.
>
> THE COURT: Let's go ahead and cross Mr. Nethery and then --
>
> DEFENSE: Do a bill after.

4

THE COURT: (Nods head affirmatively).

(Conference at the Bench concluded. Return to open court.)

Shortly thereafter, one of the jurors became ill and the trial court took a brief recess. During the recess, the State, not defense counsel, re-urged the trial court to instruct the jury to disregard this testimony. The trial court stated that it could not give the instruction now but would do so at the end of Nethery's testimony. Defense counsel did not object to the trial court's failure to instruct the jury at that time.

At the conclusion of Nethery's testimony, the trial court instructed the jury as follows:

> All right. Ladies and gentlemen of the jury, earlier in the -- Ms. Ellisor, when she was first directing Assistant Chief of Police Nethery, asked a question about whether Mr. Charles cooperated or made a statement. I'm going to ask you to disregard that question.
>
> Mr. Charles has a Fifth Amendment right that is absolute. He shall not -- And it shall not be taken as any circumstance against him. He is not required to make a statement or cooperate with the police in any way. That is a right afforded to every citizen; and it will not be taken up again, so I'm going to ask you to disregard that statement. Thank you.

Charles moved for a mistrial, which was denied by the trial court.

### Facts Relevant to Kelly Goodman's Pending Criminal Charges

On April 18, 2019, during a break in the State's direct examination of Goodman and outside the presence of the jury, the trial court informed Goodman that it had been made aware that she had an indictment pending in the 458th Judicial

5

District of Fort Bend County,[2] and that Charles's counsel needed to question her about this charge for appellate record purposes. Before any questioning occurred, however, the trial court suggested that this matter be taken up later when Goodman's counsel could be available, and Charles's counsel agreed.

One week later, on April 25, Goodman again appeared outside the presence of the jury, this time with her counsel, Wilvin Carter, present. Goodman testified that she was arrested on August 8, 2018 for the misdemeanor offense of possession of marijuana and the felony offense of tampering with evidence. Goodman testified that she had been going to court on these charges since 2018. Goodman testified that she reached an agreement with the State on April 15, 2019, a few days before she testified in this case, that both cases would be dismissed if she took a drug class.

Goodman testified that she had spoken with the prosecutors trying this case against Charles and the only mention of her pending charges was the prosecutor telling her they should not come up during cross examination. Goodman testified that she had never spoken with the prosecutors handling Charles's case about any sort of arrangement for leniency in her pending cases in exchange for her testimony against Charles. Goodman testified that she was aware that the Fort Bend County

---

[2]    There is some discrepancy in the record about where Goodman's charges were pending with the Fort Bend County District Courts.

District Attorney's Office was not prosecuting the cases against her and that her cases were being handled by a special prosecutor.

Carter, Goodman's counsel, then stated that the plea offer was made by the special prosecutor Scott Durfee on February 20, 2019 and he spoke with Goodman about accepting that offer in early March 2019. Carter also clarified that Durfee did not have any direct contact with Goodman. All communication with Durfee had been through him. Carter explained that he had not spoken with Durfee regarding Goodman's status as a witness in this case and he did not know whether Durfee was aware of Goodman's status as a witness in this case.

Charles's counsel then called his associate Amanda Bolin (a former prosecutor with the Fort Bend County District Attorney's Office), who testified that she had spoken with Durfee and Durfee told her that he was aware that the reason for his appointment as the special prosecutor in the cases against Goodman was because Goodman was a victim or witness in a serious sexual abuse case. Bolin also testified that Durfee told her he made the offer to Goodman "as if the case was pending in Harris County." Bolin agreed that Goodman received "the same treatment any other defendant would have received if they had similar cases in Harris County" on the marijuana charge. As to the tampering charge, Bolin testified that Durfee told her "that he was dismissing the tampering because it was a classic case of Fort Bend County overcharging."

7

Charles argued that the evidence as to Goodman's pending charges should be admissible to show bias or interest and that refusing to allow cross-examination that might show leniency in exchange for Goodman's testimony violated the confrontation clause and due process. In support of his argument, Charles specifically relied on Texas Rule of Evidence 613 and *Carroll v. State*, 916 S.W.2d 494 (Tex. 1996). The trial court denied Charles's request to cross examine Goodman regarding the criminal charges pending in Fort Bend County.

### *Facts Relevant to the Alleged Brady Violation*

During cross-examination, Kerr testified that she met with prosecutors numerous times in the past year. She further testified that other individuals were present during these meetings and that each person present was taking notes. After the trial court recessed for the day, Charles requested that the State turn over the notes taken by these other individuals. Approximately five to six hours later, the State produced the notes, consisting of 60-70 handwritten pages of notes from the victim liaison employee with the Fort Bend County District Attorney's Office.

The next day, Charles moved for a mistrial so that he could "investigate what these notes are, who these notes came from, [and] who else was in the room." Charles argued that, during these interviews, Kerr made statements that were inconsistent with statements she made during her previous Children's Advocacy Center interviews, that these inconsistent statements were contained in the

8

previously undisclosed notes, and that he had the right to impeach Kerr with those inconsistent statements. The trial court denied Charles's motion for mistrial but granted his alternative request to have additional time to review the notes.

Kerr was later cross examined at length regarding her prior inconsistent statements. Charles's counsel did not question Kerr about the previously undisclosed notes and did not move to introduce the previously undisclosed notes into evidence. Nor did Charles's counsel question the author of the notes on the record or request an opportunity to do so.

***Facts Relevant to the Alleged False Testimony from Fiona Remko***

Fiona Remko, the Director of the Children's Advocacy Center, gave expert testimony on her forensic interview with Kerr. Remko testified that Kerr described to her an "ongoing course of conduct" of sexual abuse perpetrated by Charles.

After a series of questions and answers about how children who have been abused typically disclose the abuse they have suffered, the following exchange occurred:

STATE: I want to turn your attention to a different forensic interview that you did of a child named Kelly Goodman. Do you remember conducting that interview?

REMKO: Yes, I do.

STATE: And in evaluating or analyzing that interview, was the disclosure of Kelly Goodman a purposeful disclosure or an accidental disclosure?

REMKO: Hers was more purposeful.

9

STATE:     How so?

DEFENSE:   Excuse me, your Honor. Can we get a clarification of what date the interview that we're talking about?

THE COURT: Yes.

STATE:     Yes, I believe it was – Can I have one moment, your Honor.

THE COURT: Yes.

STATE:     Yes, your Honor. Ms. Remko, do you remember the specific interview on October 3rd, 2013?

REMKO:     Yes.

STATE:     And in this interview, was the alleged perpetrator also Eddie Charles?

REMKO:     Yes, it was.

At this point, the defense sought to take Remko on voir dire and the parties, in a conference outside the hearing of the jury, clarified that the State made a mistake regarding the interview date as the October 3 interview was primarily aimed at an allegation of inappropriate touching by J.A., Goodman's mother's boyfriend. However, Charles was mentioned several times during the October 3 interview. The trial court expressed concern over the mistake but stated that it would "take it up overnight and see where we're at with it in the morning."

The next morning, Charles moved for a mistrial and, alternatively, requested that Remko not be allowed to testify. The trial court denied those requests but

allowed both the State and the defense to ask questions clarifying Remko's testimony about the October 3 interview.

The State then continued direct examination of Remko and immediately pointed out the prosecutor's mistake regarding the dates and intention to reference an interview in 2014 rather than 2013. Remko then went through the various interviews of Goodman conducted at the Children's Advocacy Center, and specifically testified that the October 3 interview involved an allegation of sexual abuse by a perpetrator other than Charles. Charles's counsel then conducted cross examination of Remko about her mistake regarding the October 3 interview, during which Remko acknowledged that she had been mistaken and that this interview was not regarding a claim of sexual abuse by Charles.

## Post-Arrest Silence

In his first issue, Charles argues that the trial court erred by refusing to grant a mistrial following Officer Nethery's testimony on Charles's post-arrest silence. Charles also contends that although the trial court instructed the jury to disregard that testimony, the trial court did not do so promptly. Both errors, Charles contends, violated his rights against self-incrimination under the Fifth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution. *See* U.S. CONST. amend. V; TEX. CONST. art. 1, § 10.

11

## A.     Standard of Review

A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). It is a remedy appropriate only for a narrow class of highly prejudicial and incurable errors. *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). We review a trial court's decision to deny a motion for mistrial for abuse of discretion. *Hawkins*, 135 S.W.3d at 77; *Browne v. State*, 483 S.W.3d 183, 203 (Tex. App.—Austin 2015, no pet.). An abuse of discretion exists only if the trial court's ruling is so "clearly wrong as to lie outside the zone of reasonable disagreement" or is arbitrary or unreasonable. *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002); *see State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005).

## B.     Applicable Law

A comment on the defendant's post-arrest silence violates the defendant's rights under the Fifth Amendment of the United States Constitution and Article I, Section 10 of the Texas Constitution. *See Doyle v. Ohio*, 426 U.S. 610, 618 (1976); *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995). However, an instruction to disregard will generally cure any harm from the error. *Dinkins*, 894 S.W.2d at 357. An instruction to disregard is effective unless consideration of the facts of the particular case suggests the impossibility of withdrawing the impression

12

produced in the minds of the jury. *Rosas v. State*, 76 S.W.3d 771, 776 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988)). Although not specifically adopted as definitive or exhaustive, the courts have looked to several factors to determine whether an instruction to disregard cured the prejudicial effect: (1) the nature of the error; (2) the persistence of the prosecution in committing the error; (3) the flagrancy of the violation; (4) the particular instruction given; (5) the weight of the incriminating evidence; and (6) the harm to the accused as measured by the severity of sentence. *Johnson v. State*, No. 01-11-00820-CR, 2013 WL 4680360, at *7 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, pet. ref'd) (mem. op., not designated for publication) (citing *Waldo*, 746 S.W.2d at 754).

To preserve error for appellate review, a defendant must make his complaint to the trial court by a timely request, objection, or motion that states the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1)(A). With some exceptions, a defendant in a criminal case forfeits error, even constitutional error, when he fails to make a timely objection or fails to request proper relief. *See Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986). By failing to timely and properly object, a defendant may forfeit his complaint that there was an improper comment on his post-arrest silence. *Heidelberg v. State*, 144 S.W.3d 535, 542–43 (Tex. Crim. App. 2004); *Wheatfall v.*

13

*State*, 882 S.W.2d 829, 836 (Tex. Crim. App. 1994); *Smith*, 721 S.W.2d at 855. Further, improper comment on a defendant's post-arrest silence is not fundamental error. *Smith*, 721 S.W.2d at 855; *see also Fonseca v. State*, No. 08-10-00080-CR, 2011 WL 3717006, at *7 (Tex. App.—El Paso Aug. 24, 2011, no pet.) (not designated for publication) (noting that, while it is true certain fundamental errors may be raised for first time on appeal, it is well established that complaint regarding admission of evidence of defendant's silence is waived in absence of objection).

## C.  Analysis

The record here fails to demonstrate that Charles timely objected to the admission of evidence of his post-arrest silence. Charles did not object immediately following the State's question as to whether Charles provided a statement. Nor does the record reflect any objection by Charles in the subsequent discussions between the State and the trial court. We note that when it first raised the issue with the trial court, the State mentioned that defense counsel asked if the trial court would instruct the jury to disregard, and it is possible this discussion took place off the record. We do not, however, see any objection from defense counsel in the record prior to (or even after) this discussion. Rather, each time the issue was raised with the trial court, it was done so by the State.

Likewise, Charles never objected below that the trial court's failure to promptly instruct the jury was insufficient to cure any error. In fact, when the issue

14

was first raised by the State, the trial court stated that they would finish Nethery's cross-examination first, and defense counsel agreed, stating they would "[d]o a bill after." After the completion of Nethery's testimony, the trial court instructed the jury as detailed above. Charles moved for a mistrial but did not object that the instruction was untimely.

Due to Charles's failure to timely object to the State's question and his failure to object based on a lack of prompt instruction by the trial court, we hold that Charles has failed to preserve error on his first issue. *See* TEX. R. APP. P. 33.1(a) (to preserve complaint for appellate review, party must have presented specific and timely request, motion, or objection to trial court); *Davis v. State*, 313 S.W.3d 317, 352 (Tex. Crim. App. 2010) ("An appellant is obligated to point out to this Court where the record shows that he has preserved error on his claim."); *see also Heidelberg*, 144 S.W.3d at 542–43 (holding appellant did not preserve error as to argument that State's improper comment on post-arrest silence violated Texas Constitution because only objection at trial was based on Fifth Amendment); *Wheatfall*, 882 S.W.2d at 836 (overruling appellant's argument that testimony amounted to comment on appellant's post-arrest silence in violation of United States Constitution because only objection raised at trial did not comport with appellant's complaint on appeal); *Smith*, 721 S.W.2d at 855 (holding appellant's argument that State committed fundamental error when it impeached appellant's testimony with his

15

post-arrest silence was not preserved because he failed to object to this questioning at trial).

Even if Charles had preserved error, an instruction to the jury generally suffices to cure any harm from an improper comment on an appellant's post-arrest silence. *Dinkins*, 894 S.W.2d at 356. Courts may consider a number of factors when determining whether an instruction to disregard cured the prejudicial effect, including: (1) the nature of the error; (2) the persistence of the prosecution in committing the error; (3) the flagrancy of the violation; (4) the particular instruction given; (5) the weight of the incriminating evidence; and (6) the harm to the accused as measured by the severity of sentence. *Waldo*, 746 S.W.2d at 754.

Although the nature of the constitutional right affected was serious, its prejudicial effect is limited for several reasons. The State's violation was not flagrant—it consisted of one question (i.e., did Charles provide a statement), to which the answer was no. The State did not persist in questioning Nethery about Charles's silence or mention it at any other time during trial or in closing argument. In fact, it was the State who urged the trial court to instruct the jury to disregard the State's question and Nethery's response. Further, the trial court gave a detailed instruction, in which the trial court ordered the jury to disregard the State's question and Nethery's response, and explicitly explained to the jury that Charles had an absolute right under the Fifth Amendment not "to make a statement or cooperate

16

with the police in any way," and that his failure to make a statement "shall not be taken as any circumstance against him." Finally, the improper question did not change the outcome of the case considering all the evidence supporting Charles's conviction, including the testimony from Goodman and Kerr. Thus, this improper question and answer is not the type of conduct that would be sufficiently egregious to defeat the presumed efficacy of the trial court's instruction to disregard, and any error caused by the State's comment on Charles's post-arrest silence was cured by the instruction. *See Johnson*, 2013 WL 4680360, at \*8 (holding trial court did not abuse its discretion in denying request for mistrial because "instruction to disregard was sufficient to remove the impression produced on the minds of the jury, and the State's misconduct was not pervasive or flagrant"); *Castro v. State*, No. 01-96-00739-CR, 1998 WL 159930, at \*1–2 (Tex. App.—Houston [1st Dist.] Mar. 26, 1998, pet. ref'd) (not designated for publication) (holding any error caused by State's comment on appellant's post-arrest silence was cured by trial court's instruction to disregard because State's question—"You never gave a written statement to any law enforcement person regarding what took place?"—"was general in nature and not repeated or referenced throughout the rest of the trial").

We therefore hold that, even if Charles had preserved error, the trial court did not abuse its discretion in denying his request for a mistrial. We overrule Charles's first issue.

**Cross-Examination on Pending Criminal Charges**

In his second issue, Charles argues that the trial court erred by refusing to permit him to cross-examine Goodman regarding her pending criminal charges in Fort Bend County and the State's offer to dismiss those charges. He contends that this was an appropriate area of cross-examination and the trial court's refusal to permit cross-examination on her pending charges violated the Confrontation Clause of the United States Constitution and Article 1, Section 10 of the Texas Constitution. *See* U.S. CONST. amend. V; TEX. CONST. art. 1, § 10.

**A.      Applicable Law**

The right to confront one's accuser necessarily includes the right to cross-examine. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Exposing a witness's motivation to testify for or against the accused or the State is a proper and important purpose of cross-examination. *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998); *see also Carroll*, 916 S.W.2d at 498 ("This broad scope necessarily includes cross-examination concerning criminal charges pending against a witness and over which those in need of the witness'[s] testimony might be empowered to exercise control."). Parties are allowed great latitude to show "any fact which would or might tend to establish ill feeling, bias, motive and animus on the part of the witness." *London v. State*, 739 S.W.2d 842, 846 (Tex. Crim. App. 1987). But a trial judge may limit cross-examination as inappropriate for several

reasons. *Carroll*, 916 S.W.2d at 498 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (for example, trial judge may exercise discretion to prevent harassment, prejudice, confusion of the issues, and marginally relevant interrogation)).

To impeach a witness with evidence of pending criminal actions, the proponent of the evidence must establish that the evidence is relevant. *Carpenter*, 979 S.W.2d at 634; *Carroll*, 916 S.W.2d at 494; *London*, 739 S.W.2d at 846–48. However, evidence that a witness is facing pending charges is not relevant for the purpose of showing bias or a motive to testify without some "causal connection" or "logical relationship" between the evidence, which might show bias or motive such as the witness's pending charges, and the "vulnerable relationship" or potential bias or prejudice for the State. *Irby v. State*, 327 S.W.3d 138, 149 (Tex. 2010); *Carpenter*, 979 S.W.2d at 634–35 & n.5. We review this issue for abuse of discretion. *Irby*, 327 S.W.3d at 154.

The required "causal connection" is a matter of relevance. *See* TEX. R. EVID. 401; *Carpenter*, 979 S.W.2d at 634. However, the cross-examiner must show the relevance of the "vulnerable status" or other source of bias to the witness's testimony. *Irby*, 327 S.W.3d at 151–52. All witnesses with pending charges, or who have some other "vulnerable status" are not automatically subject to cross-examination about that status regardless of any lack of relevance to the witness's testimony. *Id.* at 152. The mere existence of pending charges is not always

automatically relevant to show the witness's potential bias and motive to testify favorably for the State. *See id.*

## B.    Analysis

Here, Charles argues that the jury was unable to make an informed decision about Goodman's credibility because they were not permitted to hear about her "pending charges that existed just days prior to [Charles's] trial nor the State's offer to dismiss said charges." Charles argues that *Carroll*, where the Texas Court of Criminal Appeals held that the appellant's inquiry into a witness's "incarceration, his pending charge and possible punishment as a habitual criminal, was appropriate to demonstrate [the witness's] potential motive, bias or interest to testify for the State," is directly on point and dictates that the trial court erred in not permitting this line of cross-examination. 916 S.W.2d at 500.

While Charles is correct that the Court of Criminal Appeals concluded in *Carroll* that "[a] defendant is permitted to elicit any fact from a witness intended to demonstrate that witness'[s] vulnerable relationship with the state," *id.*, he does not address the additional requirement that the defendant show a "causal connection" between the witness's pending charges and their testimony. *See Carpenter*, 979 S.W.2d at 634–35. For instance, in *Carpenter*, the defendant sought to impeach a State's witness with evidence of a pending federal conspiracy charge, under the theory that the pending charge might make the witness inclined to testify favorably

20

for the State to obtain some benefit or avoid some detriment in the federal case. *Id.* at 635. The trial court, acting on the State's objection, did not allow evidence of the pending federal charge before the jury. *See id.* The Court of Criminal Appeals affirmed this ruling, reasoning that for an impeachment by evidence of pending charges to be admissible, a defendant must establish some causal connection or logical relationship between the pending charges and the witness's potential bias or prejudice for the State, or testimony at trial. *Id.* at 634. The defendant in *Carpenter* did not show why prosecution by the federal government for conspiracy tended to show that the witness's testimony in the unrelated state prosecution might be biased. *Id.* at 635. The defendant speculated that it was possible the witness believed his state-court testimony would be of some benefit in the federal prosecution, but there was no evidence that this was what the witness thought or that the testimony might actually benefit him in the federal prosecution. *Id.* The Court concluded that the defendant simply had not provided any causal connection or logical relationship between the pending federal charges and the witness's testimony at trial. *Id.*

Similarly, in *Molina*, the Fourteenth Court of Appeals held that the trial court did not abuse its discretion in denying defense counsel's request to cross-examine a witness concerning a federal investigation and possible criminal charge because the defendant failed to establish a causal connection or logical relationship between the witness's testimony and the potential for bias because of the federal investigation.

*Molina v. State*, 450 S.W.3d 540, 551–52 (Tex. App.—Houston [14th Dist.] 2014, no pet.). In support of its holding, the court found particularly relevant the witness's testimony that there was no agreement concerning leniency in the federal investigation if he testified and that he had no expectation of any leniency in that matter as a result. *Id.* at 552. Furthermore, the witness's attorney made similar representations to the trial court. *Id.*

The same is true here. The purported bias here is that there was an offer to dismiss the pending charges, also pending in Fort Bend County, against Goodman. Goodman testified, however, that her pending charges were being handled not by the Fort Bend County District Attorney's office but by a special prosecutor, and that she had never spoken with the prosecutors handling Charles's case regarding any arrangement for leniency in her pending cases in exchange for her testimony against Charles. Her attorney, Carter, also stated that the special prosecutor never communicated directly with Goodman and that all communication went through him. Carter explained that the special prosecutor "never discussed his knowledge about this case" with Carter. Moreover, Bolin, Charles's own witness, testified that the special prosecutor made the offer to Goodman "as if the case was pending in Harris County" and agreed that Goodman received "the same treatment any other defendant would have received if they had similar cases in Harris County." Thus, there was simply no causal connection shown between Goodman's pending charges

and her testimony in this case. *See Carpenter*, 979 S.W.2d at 634–35; *Molina*, 450 S.W.3d at 551–52; *see also Garcia v. State*, No. 13-19-00390-CR, 2020 WL 7757378, at *4 (Tex. App.—Corpus Christi Dec. 30, 2020, no pet.) (mem. op., not designated for publication) (holding trial court did not abuse its discretion in refusing cross-examination on witness's pending criminal charge because both witness and prosecution explicitly stated that witness was not offered or given any leniency in exchange for his testimony).

Though the constitutional right to confront witnesses encompasses "the opportunity to show that a witness is biased or that his testimony is exaggerated or unbelievable," a trial court "retains wide latitude to impose reasonable limits on such cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant.'" *Irby*, 327 S.W.3d at 145 (quoting *Van Arsdall*, 475 U.S. at 679). Under these circumstances, we cannot say the trial court acted beyond that latitude and abused its discretion by refusing to permit cross-examination on Goodman's pending criminal charges.

We overrule Charles's second issue.

### *Brady* Violation

In his third issue, Charles argues that the trial court abused its discretion in denying his motion for mistrial based on the State's alleged *Brady* violation.

Specifically, Charles contends that the State failed to turn over exculpatory and impeachment evidence, consisting of 60-70 pages of notes taken during interviews conducted of Kerr at the District Attorney's office, until the middle of trial. Charles contends that these interview notes showed that Kerr "had made prior inconsistent statements, statements that were only contained in the withheld documents, and that there were discrepancies in her story."

## A.    Applicable Law

The prosecution has an affirmative duty to disclose evidence favorable and material to a defendant's guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87–88 (1963); *Michaelwicz v. State*, 186 S.W.3d 601, 613 (Tex. App.—Austin 2006, pet. ref'd). To establish a *Brady* violation, the defendant must show (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith, (2) the withheld evidence is favorable to him, and (3) the evidence is material, meaning there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Strickler v. Greene*, 527 U.S. 263, 280–82 (1999); *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011).

When the *Brady* material is discovered during trial, the initial inquiry is whether the defendant was prejudiced by the delayed disclosure. *Palmer v. State*, 902 S.W.2d 561, 565 (Tex. App.—Houston [1st Dist.] 1995, no pet.); *see also Little v. State*, 991 S.W.2d 864, 867 (Tex. Crim. App. 1999) (reasoning that to prevail on

24

a *Brady* claim, defendant must show prejudice from State's tardy disclosure). To show prejudice, the defendant must show a reasonable probability that, had the evidence been disclosed to the defense earlier, the result of the proceeding would have been different. *Little*, 991 S.W.2d at 866. The disclosure of *Brady* material during trial satisfies the requirements of due process "[i]f the defendant received the material in time to put it to effective use at trial." *Palmer*, 902 S.W.2d at 565; *see also Perez v. State*, 414 S.W.3d 784, 789–90 (Tex. App.—Houston [1st Dist.] 2013, no pet.). A defendant's conviction should not be reversed simply because the *Brady* material was not disclosed as early as it might and should have been. *Perez*, 414 S.W.3d at 790; *Palmer*, 902 S.W.2d at 565.

## B. Analysis

Although Charles argues that these interview notes contained inconsistent statements and "several discrepancies in [Kerr's] various accounts of what actually transpired," Charles did not introduce the interview notes into the trial record, did not cross-examine Kerr about those notes, and did not call the author of the notes as a witness. Moreover, the record before us does not include the interview notes, i.e., the purported *Brady* material. "A finding of a *Brady* violation cannot be made on the basis of conjecture regarding what the record might have shown." *Murray v. State*, No. 08-16-00185-CR, 2018 WL 1663882, at *7 (Tex. App.—El Paso Apr. 6, 2018, pet. ref'd) (not designated for publication). Consequently, we cannot determine

whether the interview notes were exculpatory or material, nor can we evaluate whether Charles was prejudiced by the State's delayed disclosure or whether the result of the proceeding would have been different had those notes been turned over to the defense earlier. *See Carraway v. State*, 507 S.W.2d 761, 764 (Tex. Crim. App. 1974) (appellate court could not determine accuracy of alleged *Brady* violation because claim was based on witness statement not included in record); *Murray*, 2018 WL 1663882, at *7 (rejecting appellant's argument that State failed to disclose medical records in violation of *Brady* because appellate record did not include the purported medical records at issue); *Simpson v. State*, No. 05-95-01616-CR, 1997 WL 242811, at *12 (Tex. App.—Dallas May 13, 1997) (not designated for publication), *aff'd*, 991 S.W.2d 798 (Tex. Crim. App. 1998) (overruling appellant's *Brady* argument because, even assuming there was suppressed evidence, court could not determine whether evidence was favorable to defendant or whether it was material because evidence was not included in appellate record); *see also Villarreal v. State*, 576 S.W.2d 51, 65 (Tex. Crim. App. 1978) (determining appellant waived possible *Brady* error by failing to secure inclusion of prosecutor's file in appellate record); *Longoria v. State*, No. 13-12-00226-CR, 2013 WL 5675913, at *3 (Tex. App.—Corpus Christi Oct. 17, 2013, no pet.) (mem. op., not designated for publication) (holding appellant waived any possible *Brady* error by failing to secure inclusion of complained-of materials in appellate record).

Therefore, we overrule Charles's third issue.

**False Testimony**

In his fourth issue, Charles argues that the trial court abused its discretion by failing to grant a mistrial after the State's expert, Remko, gave false testimony. Charles contends that during direct examination by the State, Remko falsely testified that she interviewed Goodman at the Child Advocacy Center on October 3, 2013 and that the subject of and alleged perpetrator discussed in that interview was Charles. In truth, the subject of the October 3 interview was J.A., Goodman's mother's boyfriend. Charles moved for a mistrial arguing that the trial court could not "unring that bell" because the jury heard allegations from the October 3 interview, which were "blatantly not true," on top of the testimony from two complainants, as well as a victim from a prior conviction. The trial court denied Charles's motion for mistrial and his alternative motion to strike Remko's testimony, stating that it would allow Charles "to cross Ms. Remko on the 10/3/13 interview and clarify," and permit the State to clarify, Remko's testimony with respect to that interview.

The State continued its direct examination of Remko, during which Remko clarified that the subject of the October 3 interview was not Charles but was instead J.A. Charles then cross-examined Remko about her mistake related to the October 3 interview. Remko admitted that she was "wrong" when she testified that Charles

was the subject of the October 3 interview, that she "made a mistake" and was "completely incorrect."

Despite the State's clarification of the mistaken testimony and his cross-examination of Remko related to the mistake, Charles contends the trial court violated the Sixth and Fourteenth Amendments to the United Constitution and Article 1, Section 10 of the Texas Constitution by denying his motion for mistrial and alternative request to strike Remko's testimony. *See* U.S. CONST. amends. VI, XIV; TEX. CONST. art. 1, § 10.

## C.    Applicable Law

The Due Process Clause of the Fourteenth Amendment can be violated when the State uses false testimony to obtain a conviction, regardless of whether it does so knowingly or unknowingly. *Ex Parte Robbins*, 360 S.W.3d 446, 459–60 (Tex. Crim. App. 2011). Accordingly, to constitute a due process violation, the testimony used by the State must have been false, and it must have been material to the defendant's conviction, meaning "there is a reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id.* (citing *United States v. Agurs*, 427 U.S. 97, 103–04 (1976), and *Ex parte Ghahremani*, 332 S.W.3d 470, 478 (Tex. Crim. App. 2011)).

The case law in this area frequently refers to the use of perjured testimony, but it is sufficient that the testimony was "false." *Id.* at 460 (citing *Napue v. Illinois*,

360 U.S. 264, 269 (1959)). Because testimony need not amount to perjury to constitute a due process violation, the proper question "is whether the particular testimony, taken as a whole, 'gives the jury a false impression.'" *Ex parte Weinstein*, 421 S.W.3d 656, 665–66 (Tex. Crim. App. 2014). "If the prosecution presents a false picture of the facts *by failing to correct its own testimony when it becomes apparent that the testimony was false*, then the conviction must be reversed." *Losada v. State*, 721 S.W.2d 305, 311 (Tex. Crim. App. 1986) (citing *Napue*, 360 U.S. at 269) (emphasis added). However, courts have held that where the State corrects such false testimony, a defendant's due process rights are not violated, and a trial court does not abuse its discretion in denying a motion for mistrial. *See Vasquez v. State*, 67 S.W.3d 229, 239 (Tex. Crim. App. 2002) (rejecting appellant's argument that State used false testimony in violation of due process because "[e]ven if the testimony was a lie, the State corrected the false testimony in its closing argument" and appellant failed to demonstrate prejudice from any alleged tardiness of correction); *Marchbanks v. State*, 341 S.W.3d 559, 562 (Tex. App.—Fort Worth 2011, no pet.) (holding trial court did not abuse its discretion by denying appellant's motion for mistrial on the basis of State's alleged use of perjured testimony because State corrected witness's misstatement by informing appellant's counsel about misstatement and recalling witness to account for such misstatement); *see also Baker v. State*, No. 07-19-00048-CR, 2020 WL 3154784, at *8 (Tex. App.—Amarillo June

29

12, 2020, pet. ref'd) (mem. op., not designated for publication) (holding trial court did not abuse its discretion by denying appellant's motion for mistrial on basis of State's alleged use of perjured testimony because, after learning witness testified falsely, State corrected witness's misstatement by recalling witness to account for her false testimony before jury).

**D.     Analysis**

Here, there is no dispute that Remko mistakenly testified that Charles was the subject of the October 3 interview. However, after this mistake was discovered, the trial court permitted the State to clarify and correct this testimony during further redirect of Remko. Charles was also given the opportunity to cross-examine Remko further about this mistake. Thus, the State did exactly what the above-cited authorities require, i.e., it corrected any false impression with respect to the October 3 interview through additional direct of Remko. Any false impression was further corrected through Remko's cross examination, during which Remko admitted that she was "wrong," that she "made a mistake," and that she was "completely incorrect." Thus, under these circumstances, we hold that the trial court did not abuse its discretion by denying Charles's motion for mistrial or otherwise striking Remko's testimony. *See Vasquez*, 67 S.W.3d at 239; *Losada*, 721 S.W.2d at 311; *Marchbanks*, 341 S.W.3d at 562; *see also Cooper v. State*, 509 S.W.2d 565, 569 (Tex. Crim. App. 1974) (holding trial court did not abuse its discretion in overruling motion for

mistrial based on police officer's untruthful testimony concerning appellant's criminal record because "proper recourse was to expose the inaccuracy by effective cross-examination, and not the abandonment of all further interrogation and assertion of entitlement to a mistrial because the testimony was prejudicial").

We overrule Charles's fourth issue.

## Conclusion

We affirm the judgment of the trial court.


Amparo Guerra
Justice

Panel consists of Justices Hightower, Countiss, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).